STATE OF NORTH CAROLINA v. DEWEY LEROY PETTY

No. COA98-493

(Filed 2 March 1999)

**1. Evidence— corroborative—contradictory**

The trial court did not err in a prosecution for indecent liberties and sexual offenses by admitting evidence which defendant argued contradicted rather than corroborated statements made by the victim but the victim's testimony indicated a course of continuing sexual abuse and any new or additional instances of abuse tended to strengthen her trial testimony.

**2. Sexual Offenses— instructions—nonunanimous**

There was no error in a prosecution for indecent liberties and sexual offenses against a child where the court instructed the jury that it could find defendant guilty of a first-degree sexual offense if it found that defendant had engaged in either of two acts. The single wrong of engaging in a sexual act with a minor may be established by a finding of various alternatives, which are merely alternative ways of showing the commission of a sexual act. Even if some jurors found that one act occurred and others found that the other act transpired, the jury as a whole would unanimously find that there occurred sexual conduct constituting the single crime of engaging in a sexual act with a child. However, it was noted that charging a defendant with a separate count of first-degree sexual offense for each alternative sexual act performed in a single transaction would result in a multiplicious indictment.

### 3. Criminal Law— prosecutor's closing argument—reasonable doubt

The trial court did not err in a prosecution for first-degree sexual offense and taking indecent liberties with a minor by not intervening ex mero motu in the prosecutor's argument concerning reasonable doubt where defendant had argued that the jury would have to get to 9.7 or 9.8 on a scale of one to ten and the prosecutor argued for a seven and explicitly informed the jury that the case was not about scales at all. Moreover, any prejudice was remedied by the trial court's instruction on reasonable doubt, which was substantially the same as an instruction approved by the Supreme Court with the addition of the phrase "sits nice." That phrase was improper but not prejudicial.

Appeal by defendant from judgments filed 5 December 1995 by Judge C. Preston Cornelius in Guilford County Superior Court. Heard in the Court of Appeals 12 January 1999.

*Attorney General Michael F. Easley, by Assistant Attorney General Jane Rankin Thompson, for the State.*

*Wyatt, Early, Harris & Wheeler, L.L.P., by Stanley F. Hammer, for defendant-appellant (Robert H. Edmunds, Jr., filed the record and appellant's brief).*

GREENE, Judge.

Dewey Leroy Petty (Defendant) appeals from his convictions for first-degree sexual offense and taking indecent liberties with a child.

J.F., the prosecuting witness, testified that Defendant, a friend of her father, began sexually molesting her following her tenth birthday. Defendant began giving J.F.'s father rides home from work, and J.F. saw Defendant "[a]lmost every day." J.F. testified that she often went to "the stores" with Defendant, and specifically named "Winn-Dixie, Food Lion, Crown, Eckerd, [and] Family Dollar." Sometimes Defendant would take her brothers and sisters as well, but "[s]ometimes" Defendant would take only J.F. She testified that it was "[s]cary" when she went to the stores by herself with Defendant, "[b]ecause every time we're alone, he would massage my private parts." J.F. testified that Defendant had often given her money, ice cream, and presents, and had given her a hundred dollars for her tenth birthday. Around the time of J.F.'s tenth birthday, Defendant

took her to a carnival. On this occasion, Defendant "tried to hurt my—play with my body parts." J.F. testified that it was "a hot night," and that Defendant pulled down her skirt to "play with [her] private parts again." J.F. testified that Defendant touched her "[u]nderneath" her underwear and "[i]nside" her "private area." Defendant told J.F. "if [she] didn't let him do it that he was going to not be [her] dad's friend anymore." J.F. testified that on one occasion when it was "cold" outside, Defendant had kissed her on the lips with his mouth open, and that Defendant had kissed her "private parts" a few weeks after the carnival. This latter instance occurred in Defendant's car "behind Winn-Dixie." J.F. started screaming, but Defendant told her not to scream. J.F. pulled her pants down when Defendant told her to because "he was a grown-up and he was my father's friend." J.F. testified that Defendant never took any pictures of her, but had shown her a picture of a naked girl and had asked to take a picture of J.F.'s "private part." Eventually, J.F. told her mother about these incidents, and her parents immediately notified the police.

Elaine Whitman (Whitman) testified as an expert in the field of child sexual abuse. When Whitman began to testify as to statements made to her by J.F.'s mother, Defendant objected and the trial court gave the following instruction:

> Members of the jury, this is being offered for the purpose of corroborating the testimony of the later [witness], and it is for you to determine whether it does so, in fact, corroborate that testimony.

> It's not offered for the truth or the falsity of the statement [but] as to whether that statement was made on that occasion.

Whitman began to testify as to what J.F. had told her, and Defendant's counsel stated: "We object as far as substantive evidence that it should only be considered for corroboration or impeachment." The trial court informed the jury: "Again, it's not been offered for the truth or falsity of the statements made, it's for you to sit and determine that." Whitman then testified that J.F. had told her that Defendant "had tried to kiss her in her vaginal area, but she moved away quickly and he kissed the car seat." As Whitman continued, Defendant's counsel stated: "We just asked for an objection with the same instructions as far as anything—" and the trial court again reiterated to the jury that this testimony was "being offered for the purpose of corroborating the testimony of an earlier witness." Whitman continued to testify as to her interview with J.F., and subsequently

was asked by the prosecutor whether J.F. had told her that Defendant had taken her picture. Defendant objected, but did not state the grounds for this objection. The objection was overruled, and Whitman testified that J.F. had told her that Defendant had tried to take a picture of her with "her pants below her knees," but she had pulled her pants up before he could.

Angela Jolene Stanley, M.D. (Dr. Stanley), who examined J.F., was questioned by the prosecutor as to her conversation with J.F.'s mother. Defendant objected "to substantive evidence." The trial court instructed the jury:

> Again, members of the jury, this is being offered for the purpose of corroborating [an] earlier or a later witness, and it will be for you to say and determine whether it does in fact corroborate that witness's testimony. It is not being offered for the truth or falsity of the statement but the fact that the statement was made.

Dr. Stanley was then allowed to testify as to what J.F.'s mother told her J.F. had said. Defendant repeatedly made general objections, which were overruled. Defendant did not object on hearsay grounds, nor did Defendant seek a ruling from the trial court as to whether this evidence was corroborative.

Officer Wayne Redford (Officer Redford) testified that during his interview of J.F., she told him that on one occasion she pulled away from Defendant and he "grabbed her and pulled her back over under him and made her pull her panties down again" and continued to fondle her. Defendant moved to strike this testimony, and the trial court denied this motion.

At the close of the evidence, Defendant's counsel made the following statements during his closing argument to the jury:

> A lot that we've talked about is burden of proof, proof beyond a reasonable doubt, and if you would, if you'd imagine a scale, let's say from zero to ten, zero would be innocence and ten would be guilty, and if you went to that scale, you went up to maybe 5.1 or 5.2 on a scale of ten, that certainly wouldn't be proof beyond a reasonable doubt. We'd say you have to get maybe to 9.7 or 9.8 on that scale, and [the trial court] will talk about that.
>
> I think [the trial court will] tell you that proof beyond a reasonable doubt is proof that fully satisfies and entirely convinces. Basically, you have to be sure.

STATE v. PETTY

[132 N.C. App. 453 (1999)]

During the State's closing argument, the prosecutor stated:

> One of the things that the judge will talk to you about and [Defendant's counsel] talked to you about and I argue and contend to you, that this case isn't about boulders or scales from one to ten.
>
> You're not going to hear the judge tell you anything about number one to ten.
>
> But if you think of it in those terms, I would argue to you that about all the State has to do is show you a real strong seven. We're not talking about 90.8 or 90.9, and we're not talking about scales at all.

Defendant did not object to these statements. The trial court subsequently charged the jury as to reasonable doubt as follows:

> The State must prove to you that [D]efendant is guilty beyond a reasonable doubt.
>
> A reasonable doubt is a doubt based on reason and common sense arising out of some or all the evidence that has been presented or the lack or insufficiency of the evidence, as the case may be.
>
> Proof beyond a reasonable doubt is proof that, if you will, sits nice or entirely convinces you of [D]efendant's guilt.

The trial court instructed the jury that for the charge of first-degree sexual offense which allegedly occurred in November of 1994, "the State must satisfy you beyond a reasonable doubt that there was penetration, however slight, with an object into the genital opening of a person's body." For the first-degree sexual offense which allegedly occurred in January of 1995, "the State would have to show you beyond a reasonable doubt that [Defendant] engaged in a sexual act which was cunnilingus, with—or any penetration, however slight, by an object into the genital area of a person's body." After instructing the jury as to the remaining elements of the charged offenses, the trial court instructed the jury that "a verdict is not a verdict until all 12 jurors are unanimous as to what your decisions are. You may not render a verdict by a majority opinion."

After the jury began its deliberation, they asked the trial court to clarify the elements of each offense. In its clarification, the trial court

instructed the jury concerning the first element of first-degree sexual offense as follows:

> [T]hat [D]efendant engaged in a sexual act with the victim. A sexual act means cunnilingus, which is any touching, however slight, by the lips or the tongue of one person to any part of the female sex organ of another, or any penetration, however slight, by an object into the genital opening of a person's body.

The jury found Defendant guilty of taking indecent liberties with J.F. in November of 1994 and in January of 1995. The jury also found Defendant guilty of attempted first-degree sexual offense in November of 1994 and of first-degree sexual offense in January of 1995.

_____

The issues are whether: (I) noncorroborative testimony was improperly admitted; (II) the disjunctive jury instructions on first-degree sexual offense created a risk of a nonunanimous verdict; and (III) the prosecutor's closing argument impermissibly lowered the burden of proof such that the trial court should have intervened *ex mero motu*.

I

**[1]** Corroborative evidence is evidence that tends "to strengthen, confirm, or make more certain the testimony of another witness." *State v. Adams*, 331 N.C. 317, 328-29, 416 S.E.2d 380, 386 (1992). "Prior consistent statements of a witness are admissible as corroborative evidence, even when the witness has not been impeached." *State v. Burton*, 322 N.C. 447, 449-50, 368 S.E.2d 630, 632 (1988); *see* 1 Kenneth S. Broun, *Brandis & Broun on North Carolina Evidence* §§ 164-65 (5th ed. 1998) (noting that North Carolina allows wide latitude in the admission of prior consistent statements to corroborate a witness). Corroborative evidence may include "new or additional information" if the new information tends to strengthen or add credibility to the testimony it corroborates. *Burton*, 322 N.C. at 450, 368 S.E.2d at 632; *State v. Ramey*, 318 N.C. 457, 469, 349 S.E.2d 566, 573-74 (1986) (noting that the prior statement of the witness "need not merely relate to [the] specific facts brought out in the witness's [trial] testimony"). The witness's prior statements that contradict her trial testimony, however, may not be admitted "under the guise" of corroborating testimony. *Burton*, 322 N.C. at 450, 368 S.E.2d at 632 (holding that the witness's prior statement that the victim was "lying flat on

his back when he was shot" impermissibly contradicted the witness's trial testimony that the victim was "on top of" another individual at that time).

In this case, Defendant contends Whitman's testimony impermissibly contradicted J.F.'s testimony in several particulars. Whitman testified that J.F. had told her that one instance of sexual contact occurred behind Kroger, whereas J.F. testified to an event that occurred behind Winn Dixie. Whitman also testified that J.F. had told her the touching started after her ninth birthday and occurred about twice a week. Although J.F. testified that the touching started following her tenth birthday, and only testified to two specific instances in detail, she testified that she saw Defendant almost every day, that she and Defendant sometimes went to various stores alone, and that "every time we're alone, he would massage my private parts." J.F. further testified that Defendant made improper advances when the weather was "hot" and when it was "cold." J.F.'s testimony indicated a course of continuing sexual abuse; therefore, any new or additional instances of abuse in Whitman's testimony tended to strengthen J.F.'s trial testimony. *See Ramey*, 318 N.C. at 470, 349 S.E.2d at 574 (noting that evidence of additional instances of sexual contact was admissible as corroborative evidence where victim had testified to a course of continuing sexual abuse); *cf. State v. Everett*, 328 N.C. 72, 75, 399 S.E.2d 305, 306 (1991) (noting that children "cannot be expected to be exact regarding times and dates, [and] a child's uncertainty as to time or date upon which the offense charged was committed goes to the weight rather than the admissibility of the evidence").

Although Defendant directs this Court to further testimony by Whitman which he contends was contradictory rather than corroborative, Defendant did not object to this testimony on the ground that it was outside the scope of corroborative testimony. Instead, Defendant merely requested the trial court to instruct the jury that the evidence was offered only for corroborative purposes. Accordingly, Defendant failed to preserve these alleged errors for appellate review. *See* N.C.R. App. P. 10(b)(1) ("In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection, or motion, *stating the specific grounds for the ruling the party desired the court to make* if the specific grounds were not apparent from the context." (emphasis added)). We note that had Defendant raised the question of whether the evidence offered was admissible as corroborative evidence, the trial court could have conducted a *voir dire* hearing outside the pres-

ence of the jury to make such a determination. *See State v. Stills,* 310 N.C. 410, 416, 312 S.E.2d 443, 447 (1984).

Defendant also contends portions of Dr. Stanley's testimony were inadmissible as multiple hearsay. Although we disapprove of the admission of "hearsay statements three or four times removed from the original declarant under the guise of corroborating the corroborative witnesses," *see Stills,* 310 N.C. at 416, 312 S.E.2d at 447, a defendant must object on that ground, giving the trial court the opportunity to correct any perceived error, in order to preserve the question for appellate review, N.C.R. App. P. 10(b)(1). Defendant failed to make an objection on hearsay grounds to the trial court and therefore has failed to preserve this question for our review.

Defendant further contends the testimony of Officer Redmond placed an additional instance of sexual contact before the jury. As noted above, however, J.F. testified to a continuing course of sexual abuse; therefore, the additional instance contained in Officer Redmond's testimony was properly admitted as corroborative evidence.

II

[2] Our state constitution provides that "[n]o person shall be convicted of any crime but by the unanimous verdict of a jury in open court." N.C. Const. art. 1, § 24; *see also* N.C.G.S. § 15A-1237(b) (1997) (requiring unanimous jury verdicts). If the trial court instructs a jury that it may find the defendant guilty of the crime charged on either of two alternative grounds, some jurors may find the defendant guilty of the crime charged on one ground, while other jurors may find the defendant guilty on another ground. Where each alternative ground constitutes a separate and distinct offense, the risk of a nonunanimous verdict arises. *State v. Diaz,* 317 N.C. 545, 553, 346 S.E.2d 488, 494 (1986) (jury instructions that the defendant could be found guilty of trafficking if he either possessed or transported marijuana resulted in a verdict which risked nonunanimity because "transportation . . . and possession of . . . marijuana are separate trafficking offenses for which a defendant may be separately convicted and punished"). There is no risk of a nonunanimous verdict, however, where the statute under which the defendant is charged criminalizes "a single wrong" that "may be proved by evidence of the commission of any one of a number of acts . . . ; [because in such a case] the particular act performed is immaterial." *State v. Hartness,* 326 N.C. 561, 566-67, 391 S.E.2d 177, 180 (1990) (single crime of taking indecent liberties

with a child could be proven by showing various types of sexual conduct had occurred, and therefore no risk of nonunanimity arose from jury instructions that the defendant could be found guilty of the crime if he either indecently touched the child *or* if he induced the child to indecently touch him); *see State v. Oliver*, 343 N.C. 202, 470 S.E.2d 16 (1996) (single offense of driving while impaired could be shown either by finding the defendant drove while under the influence of an impairing substance *or* by finding the defendant's blood alcohol concentration was 0.08 or more; therefore disjunctive jury instructions did not risk nonunanimity); *cf. Rice v. State*, 532 A.2d 1357, 1364 (Md. 1987) ("In short, the law requires unanimity only in the verdict, not in the rationale upon which the verdict is based.").

> There is a critical difference between the lines of cases represented by *Diaz* and *Hartness*. The [*Diaz*] line establishes that a disjunctive instruction, which allows the jury to find a defendant guilty if he commits either of two underlying acts, *either of which is in itself a separate offense*, is fatally ambiguous because it is impossible to determine whether the jury unanimously found that the defendant committed one particular offense. The [*Hartness*] line establishes that if the trial court merely instructs the jury disjunctively as to various alternative acts *which will establish an element of the offense*, the requirement of unanimity is satisfied.

*State v. Lyons*, 330 N.C. 298, 302-03, 412 S.E.2d 308, 312 (1991).

Our courts consider the "gravamen" or "gist" of the statute to determine whether it criminalizes a single wrong or multiple discrete and separate wrongs. *Hartness*, 326 N.C. at 567, 391 S.E.2d at 180 (noting that the defendant's *purpose* for taking an indecent liberty is the gravamen of the offense; therefore the particular act performed is immaterial); *State v. Creason*, 313 N.C. 122, 326 S.E.2d 24 (1985) (noting that the gravamen of section 90-95(a)(1), which criminalizes possession of narcotics with the intent to sell or deliver, is possession with the intent to *transfer* and the method of transfer is immaterial); *cf. Rice*, 532 A.2d at 1366 (noting that courts should consider the requisite "mental state, attendant circumstances, . . . result, [and prohibited] conduct" in determining whether a statute criminalizes a single wrong or multiple distinct wrongs).

Finally, if we determine that the statute criminalizes two or more discrete and separate wrongs, we must examine the verdict, the charge, the jury instructions, and the evidence to determine whether

any ambiguity as to unanimity has been removed. *Lyons*, 300 N.C. at 307, 412 S.E.2d at 314; *State v. Foust*, 311 N.C. 351, 317 S.E.2d 385 (1984).

The statute at issue in this case provides:

> (a)  A person is guilty of a sexual offense in the first degree if the person engages in a sexual act:
>
> > (1)  With a victim who is a child under the age of 13 years and the defendant is at least 12 years old and is at least four years older than the victim . . . .

N.C.G.S. § 14-27.4(a) (Supp. 1997). A "sexual act," as used in section 14-27.4, includes: "cunnilingus, fellatio, analingus, or anal intercourse, but does not include vaginal intercourse. Sexual act also means the penetration, however slight, by any object into the genital or anal opening of another person's body . . . ." N.C.G.S. § 14-27.1(4) (1993). Section 14-27.4's gravamen, or gist, is to criminalize the performance of a sexual act with a child. The statutory definition of "sexual act" does not create disparate offenses, rather it enumerates the methods by which the single wrong of engaging in a sexual act with a child may be shown. Furthermore, our Supreme Court has expressly determined that disjunctive jury instructions do not risk nonunanimous verdicts in first-degree sexual offense cases. *State v. McCarty*, 326 N.C. 782, 784, 392 S.E.2d 359, 360 (1990) (upholding jury instruction that the defendant could be found guilty of first-degree sexual offense "if [the jury] found [the] defendant [had] engaged in either fellatio or vaginal penetration"); *Hartness*, 326 N.C. at 565, 391 S.E.2d at 179 (holding that disjunctive instructions did not result in a fatally ambiguous verdict in an indecent liberties case, and noting that the indecent liberties statute is "more similar to the statute relating to first-degree sexual offense . . . than to the trafficking statute discussed in *Diaz*").[1]

In this case, the trial court instructed the jury that it could find Defendant guilty of a first-degree sexual offense if, in addition to the other elements of first-degree sexual offense, it found that Defendant

---

1. We note that prior to the Supreme Court's decision in *McCarty*, this Court reversed a conviction for first-degree sexual offense where jury instructions had been given in the disjunctive. *State v. Callahan*, 86 N.C. App. 88, 356 S.E.2d 403 (1987). *Callahan* was implicitly overruled by our Supreme Court's contrary holding in *McCarty*. In any event, it is well settled that this Court is bound by the holdings of our Supreme Court. *Mahoney v. Ronnie's Road Service*, 122 N.C. App. 150, 153, 468 S.E.2d 279, 281 (1996), *aff'd per curiam*, 345 N.C. 631, 481 S.E.2d 85 (1997).

STATE v. PETTY

[132 N.C. App. 453 (1999)]

had "engaged in a sexual act which was cunnilingus, with—or any penetration, however slight, by an object into the genital area of a person's body." This charge was not error, because the single wrong of engaging in a sexual act with a minor may be established by a finding of various alternatives, including cunnilingus and penetration. Cunnilingus and penetration are not disparate crimes, but are merely alternative ways of showing the commission of a sexual act. The trial court's disjunctive instruction therefore did not risk a nonunanimous verdict. As in *Hartness*, "[e]ven if we assume that some jurors found that [cunnilingus] occurred and others found that [penetration] transpired, the fact remains that the jury as a whole would unanimously find that there occurred sexual conduct" constituting the single crime of engaging in a sexual act with a child. *See Hartness*, 326 N.C. at 565, 391 S.E.2d at 179.

· We note that our Supreme Court's determination that first-degree sexual offense is a single wrong for unanimity purposes requires us to conclude that charging a defendant with a separate count of first-degree sexual offense for each alternative sexual act performed in a single transaction would result in a multiplicious indictment.[2] If the defendant engages in alternative sexual acts in separate transactions, however, each separate transaction may properly form the basis for charging the defendant with a separate count of first-degree sexual offense. *Compare State v. Smith*, 323 N.C. 439, 444, 373 S.E.2d 435, 438 (1988) (holding that the State may charge a defendant with only one count of disseminating obscenity for each separate transaction even though several obscene magazines were disseminated during each transaction) *and State v. Dilldine*, 22 N.C. App. 229, 231, 206 S.E.2d 364, 366 (1974) ("It was improper to have two bills of indictment and two offenses growing out of . . . one episode.") *with State v. Dudley*, 319 N.C. 656, 356 S.E.2d 361 (1987) (noting that each act of sexual intercourse is generally a distinct and separate offense and where the defendant raped the first victim, then attempted to rape the

---

2. An indictment is multiplicious if it charges a single offense in several counts. *See* N.C.G.S. § 15A-924(a)(2) (1997) ("A criminal pleading must contain . . . [a] separate count addressed to each offense charged . . . ."); N.C.G.S. § 15A-926(a) (1997) ("Two or more offenses may be joined in one pleading . . . when the offenses . . . are based on the same act or transaction or on a series of acts or transactions connected together or constituting parts of a single scheme or plan. Each offense must be stated in a separate count as required by G.S. 15A-924."). "The principle danger in multiplicity is that the defendant will receive multiple sentences for a single offense . . . . Multiplicity does not require dismissal of the indictment, [but] the defendant will be entitled to relief from an improperly imposed multiple sentence . . . ." 2 Wayne R. LaFave & Jerold H. Israel, *Criminal Procedure* § 19.2, at 457-58 (1984).

second victim, then raped the first victim again, it was proper to charge the defendant with two counts of rape of the first victim) *and State v. Small*, 31 N.C. App. 556, 558, 230 S.E.2d 425, 427 (1976) (noting that the defendant was properly charged with two counts of rape where he dragged the victim into some bushes and raped her, then the victim attempted to lure him to a friend's apartment so she could get help, then the defendant again dragged her into some bushes and raped her a second time), *disc. review denied*, 291 N.C. 715, 232 S.E.2d 207 (1977).

## III

[3] Finally, Defendant contends the prosecutor "impermissibly lowered the burden of proof" during her closing argument to the jury, and despite Defendant's failure to object, the trial court should have corrected the prosecutor's argument *ex mero motu.*

The prosecutor's closing argument statements concerning "scales from one to ten" followed Defendant's counsel's closing argument statements that if zero was innocent and ten was guilty, then the jury would "have to get maybe to 9.7 or 9.8 on that scale." In addition, the prosecutor explicitly informed the jury that "this case isn't about . . . scales from one to ten. . . . [W]e're not taking about scales at all." Viewing the closing arguments of both defense counsel and the prosecutor in context, *see State v. Alston*, 341 N.C. 198, 239, 461 S.E.2d 687, 709 (1995), *cert. denied*, 516 U.S. 1148, 134 L. Ed. 2d 100 (1996), the trial court's failure to intervene *ex mero motu* was not an abuse of discretion. Furthermore, any prejudice which may have resulted from the prosecutor's argument was remedied by the trial court's instruction on reasonable doubt. *See State v. Rose*, 339 N.C. 172, 197, 451 S.E.2d 211, 225 (1994), *cert. denied*, 515 U.S. 1135, 132 L. Ed. 2d 818 (1995) (noting that any possible error was remedied by the trial court's instruction that "[a] reasonable doubt is a doubt based on reason and common sense, arising out of some or all of the evidence that has been presented, or lack or insufficiency of the evidence as the case may be. Proof beyond a reasonable doubt is proof that fully satisfies or entirely convinces you of the defendant's guilt"). The trial court herein stated:

A reasonable doubt is a doubt based on reason and common sense arising out of some or all the evidence that has been presented or the lack or insufficiency of the evidence, as the case may be.

Proof beyond a reasonable doubt is proof that, if you will, sits nice or entirely convinces you of [D]efendant's guilt.

This is substantially the same instruction on reasonable doubt approved by our Supreme Court in *Rose*. Although the trial court's use of the phrase "sits nice" was improper, taken in the context of the trial court's overall instruction, this phrase did not prejudice Defendant.

No error.

Judges JOHN and HUNTER concur.