STATE OF NORTH CAROLINA v. GARY LEE LAWRENCE, JR.

No. COA03-614

(Filed 3 August 2004)

### 1. Evidence— exclusion—timeliness of sexual abuse reports

The trial court did not err in a multiple second-degree rape, multiple second-degree sex offense, and double indecent liberties case involving three of defendant's children by excluding evidence pertaining to certain incidents occurring between the children and persons other than defendant, because: (1) the record shows the trial court admitted evidence of all the earlier incidents or accusations offered by either defendant or the State, provided the events or accusations at issue had occurred either during the same general time period as the charged offenses or at least before the complainants reported defendant to law enforcement authorities; (2) the only accusations that the trial court excluded were those allegedly occurring between 1999 and 2001, long after the 1991-1994 time period of the charged offenses and when the complainants were young adults; (3) although defendant contends one child's prompt reporting of some incidents tends to discredit the State's argument that the complainants delayed reporting defendant out of fear, shame, or embarrassment, defendant does not articulate a connection between the failure of a scared thirteen-year-old child to report her father's abuse and the fact that as a young woman of twenty, she reported a crime committed by a non-family member to law enforcement authorities; and (4) the trial court's rulings did not prevent or impede defendant's ability to present a defense of the charges since defendant was able to introduce ample evidence of reports and accusations made during the time period of the alleged offenses.

### 2. Rape; Sexual Offenses— second-degree rape—second-degree sexual offense—motion to dismiss—sufficiency of evidence

The trial court did not err by failing to dismiss the charges of second-degree rape and second-degree sexual offense even though defendant contends there was insufficient evidence to prove lack of consent by the victims to sexual activity with their father, because: (1) force may be established by evidence of constructive force, and constructive force does not necessarily require proof of actual physical threats where defendant was the

victim's parent; and (2) the State presented ample evidence of constructive force including that all three victims testified that they were afraid of defendant, were subjected to physical abuse at home, and that defendant performed sexual acts on each one.

### 3. Constitutional Law— right to unanimous jury—sexual assaults

The trial court in a multiple second-degree rape, multiple second-degree sex offense, and double indecent liberties case deprived defendant of his right to a unanimous verdict, because comparison of the evidence adduced at trial with the charges brought against defendant reveals that with regard to the charges of second-degree sex offense: (1) there was evidence of a greater number of separate criminal offenses than the number of charges for two of the victims; (2) there was general testimony with no accompanying instructions on limiting its consideration to one criminal offense in regard to one of the victims; (3) the jury was permitted to consider evidence of numerous criminal sexual acts with no guidance separating them into separate criminal offenses for all three victims; and (4) none of the verdict sheets associated the offense number with a given incident or separate criminal offense, nor did the trial court's instructions make any attempt to separate the individual criminal offenses or guide the jury to identify a given verdict sheet with a corresponding instance of alleged sexual abuse.

Appeal by defendant from judgments entered 9 July 2002 by Judge Jerry R. Tillett in Camden County Superior Court. Heard in the Court of Appeals 4 February 2004.

*Attorney General Roy Cooper, by Special Deputy Attorney General Ellen B. Scouten, for the State.*

*Rudolf Maher Widenhouse & Fialko, by Andrew G. Schopler, for defendant-appellant.*

LEVINSON, Judge.

On 9 July 2002 Gary Lawrence, Jr., (defendant) was convicted of four counts of second degree rape, ten counts of second degree sex offense, and two counts of indecent liberties. The alleged offenses were committed against three of defendant's four children: C.L., S.L., and G.L. Defendant was tried upon indictments returned by Camden, Currituck, and Pasquotank Counties, where the offenses

STATE v. LAWRENCE

[165 N.C. App. 548 (2004)]

were alleged to have occurred on various dates ranging from seven to ten years prior to trial.

Evidence presented by the State is summarized, in pertinent part, as follows: C.L. testified that she and her twin sister, S.L., were born in 1978 and were the oldest of defendant's four children. The Lawrence family lived in Currituck County, North Carolina, from the time C.L. was about two years old until she was fifteen. When she was about ten or eleven years old, the defendant started having explicit discussions with her about sex, and would touch her breasts and pubic area to see if she had started to develop. When she was eleven or twelve years old, defendant conducted a group session with his four children in which he taught them how to masturbate, rubbing each child's genitals and demonstrating on himself. In addition, defendant often masturbated in the living room, in front of his children.

C.L. lost her virginity to defendant when she was 12½ years old. Defendant, who was a long distance truck driver, took C.L. with him on a truck trip of several weeks. While they were on the road, defendant gave C.L. wine coolers, told her he wanted to "take her innocence," then had oral sex and vaginal intercourse with her. After this, C.L. and her father had sex on many occasions over the next two years. She described several specific instances of sexual activity, including oral sex, digital penetration, penetration with objects, vaginal intercourse, and watching pornographic videos together. In time, C.L. fell in love with defendant, and felt that she, rather than her mother, "was his wife."

In 1993, when C.L. was in the ninth grade, her parents separated and the four children moved to Camden County with defendant. C.L., who was then 15 years old, decided to end the sexual relationship with her father. Although there were several more incidents that fall, C.L. was able to end the sexual activity between them before she was sixteen. During this period, defendant was drinking heavily and was aggressive and abusive towards his children. Following a family brawl resulting in the police and DSS being called, C.L. and S.L. moved out of their father's house. C.L. testified that she never lived with defendant after that, and had seen him only a few times since 1995.

C.L.'s twin sister, S.L., offered testimony that tended to corroborate that of C.L. S.L. also testified concerning the explicit sexual discussions with her father starting when she was 11 years old, his

genital "inspections" to determine if the twins were still virgins, the group masturbation "lesson," and several occasions when defendant showered with S.L. and C.L. and washed their genitals. S.L. testified that she too had lost her virginity to her father while on a long distance truck trip. She described several incidents in which the defendant performed oral, anal, or vaginal sexual acts with her. Like C.L., S.L. succeeded in ending the sexual activity with defendant shortly before turning 16.

S. McKoy, the fourth of defendant's children, testified that she had been present at the group masturbation session, and had experienced inappropriate touching by defendant, ostensibly to check her "development." However, she testified that defendant had not engaged in any other sexual activity with her, and defendant was not charged with any sexual offenses against S. McKoy.

G.L., defendant's only son, corroborated his siblings' testimony regarding defendant's masturbation in the living room in view of other family members, the group masturbation session, and defendant's inappropriate touching of his daughters' genitals. G.L. heard defendant say on several occasions that if anyone was going to "take" C.L.'s and S.L.'s virginity, it would be him. G.L. also testified that when he and his sisters lived with defendant in Camden County, defendant was often drunk and abusive, and that on at least one occasion he heard S.L. crying in defendant's bedroom.

In 1995, at a time when C.L., S.L, and S. McKoy were living with their mother, G.L. and defendant lived on a sailboat which was docked in Pasquotank County. G.L. was 14 years old at this time. He testified that during the months they lived on the sailboat together defendant repeatedly engaged him in acts of oral and anal sex. He described several incidents in detail, in each of which defendant had provided him with alcohol, played a pornographic video, and then secured G.L.'s acquiescence in particular acts of anal or oral sex.

Defendant testified on his own behalf. He acknowledged having explicit sexual conversations with his children, and having sex toys and pornographic videos at home. He also admitted taking C.L. and S.L. on overnight truck trips, and conducting a group masturbation "lesson" with his children, although he denied touching them or stimulating himself during this session. Defendant further admitted that, while living in Camden County, he was depressed and drank to excess, and that during the fight that led to C.L. and S.L. moving out he had "backhanded" S.L., and had "popped" C.L. Defendant testified

that he had evicted S.L. and C.L. from the house after this incident because they were beyond his control.

However, defendant denied ever having sex with any of his children, showering with them, touching their genitals, showing them pornographic videos, giving them alcohol, masturbating in front of them, stating that he would "be the one" to take the twins' virginity, or engaging in any sexual activity with C.L., S.L., or G.L. He testified that he believed S.L. had organized the State's witnesses to offer false testimony as part of a conspiracy to "get even" with him for evicting her and C.L. from the house in 1995, seven years earlier.

Following trial, defendant was convicted of all charges and was sentenced to consecutive prison terms totaling 308 to 324 years. From these convictions and judgments, defendant appeals.

---

[1] Defendant argues first that the trial court erred by excluding evidence pertaining to certain incidents occurring between C.L., S.L., or G.L. and persons other than the defendant. He argues that, because he was charged with offenses alleged to have occurred between seven and eleven years before trial, "the crux of [his] defense was that his children's years of silence as to these charges indicated that the allegations were the result of fantasy or fabrication." On this basis, defendant contends the court erred by excluding evidence that the complaining witnesses "had made timely accusations or reports against a host of alleged offenders." He further asserts that the trial court's error was compounded by the prosecutor's closing argument that the complainants had delayed reporting the alleged incidents for years out of shame and embarrassment. Defendant argues that the trial court's exclusion of this evidence effectively prevented him from exercising his constitutional right to present a defense, and constitutes reversible error. We disagree.

Defendant is correct that a criminal defendant's right "to present to the jury his version of the facts is a fundamental element of due process of law, guaranteed by the Sixth and Fourteenth Amendments to the federal Constitution and by Article I, Sections 19 and 23 of the North Carolina Constitution." *State v. Miller*, 344 N.C. 658, 673, 477 S.E.2d 915, 924 (1996) (citation omitted). However, "[l]ike all evidence offered at trial, . . . evidence offered to support a defense must be relevant to be admissible. N.C.G.S. § 8C-1, Rule 402 [(2003)]." *State v. Fair*, 354 N.C. 131, 150, 557 S.E.2d 500, 515 (2001).

N.C.G.S. § 8C-1, Rule 401 (2003) defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." "Although '[the] trial court's rulings on relevancy technically are not discretionary and therefore are not reviewed under the abuse of discretion standard . . . such rulings are given great deference on appeal.'" *Dunn v. Custer*, 162 N.C. App. 259, 266, 591 S.E.2d 11, 17 (2004) (quoting *State v. Wallace*, 104 N.C. App. 498, 502, 410 S.E.2d 226, 228 (1991)). Further, even if relevant, evidence may be excluded if the trial court determines that "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C.G.S. § 8C-1, Rule 403 (2003). "Whether to exclude relevant evidence pursuant to Rule 403 is a decision within the trial court's discretion and will remain undisturbed on appeal absent a showing that an abuse of discretion occurred." *State v. Ward*, 354 N.C. 231, 264, 555 S.E.2d 251, 272 (2001) (citation omitted).

In the instant case, the record shows that both the State and defendant offered evidence of earlier investigations, allegations, and accusations by the complainants. Evidence was offered regarding numerous reports to DSS between 1982 and 1997, alleging abuse and neglect, and of the subsequent DSS investigations. In addition, the State and defendant stipulated that between 1982 and 1997 DSS conducted fifteen separate investigations of the Lawrence household, pursuant to allegations of abuse and neglect, and that during these investigations none of the children had reported sexual abuse by their father. Other evidence was offered regarding criminal charges brought against a Jacob Banks in 1987 for sexual offenses against C.L. and S.L., and about the resultant trial. The State's witnesses, particularly C.L. and S.L., were also cross-examined extensively about 1994 criminal charges that were brought against the twins' uncle, Gene Smith, for sexual offenses against both girls. Dean Cartwright testified that in 1994 he was a deputy sheriff with the Currituck County Sheriff's Department. When he interviewed C.L. and S.L. in 1994 regarding sexual abuse committed by Smith, neither girl reported that the defendant had also abused them. Other testimony was presented from S.L.'s and C.L.'s high school boyfriends pertaining to accusations each girl had made about defendant after they left home, and from relatives of C.L. and S.L. in whom they had later confided information about the defendant's sexual abuse.

The record shows that the trial court admitted evidence of all the earlier incidents or accusations offered by either defendant or the State, provided that the events or accusations at issue had occurred either during the same general time period as the charged offenses, or at least before the complainants reported defendant to law enforcement authorities. The **only** accusations that the trial court excluded were those allegedly occurring between 1999 and 2001, long after the 1991-1994 time period of the charged offenses, and when the complainants were young adults. Defendant asserts only one basis for the relevance of these incidents—that the prompt reporting of these incidents tends to discredit the State's argument that the complainants delayed reporting defendant out of fear, shame, or embarrassment. However, defendant does not articulate a connection between the failure of a scared thirteen year old child to report her father's abuse and the fact that, as a young woman of twenty, she reported a crime committed by a non-family member to law enforcement authorities. The trial court ruled that this evidence was not relevant to any issue in the case. Giving due deference to the trial court's determination in this regard, we conclude that the trial court did not err by excluding certain evidence of allegations made by the complainants many years after the subject offenses. We further conclude that the trial court's rulings did not prevent or impede the defendant's ability to present a defense to the charges, as defendant was able to introduce ample evidence of reports and accusations made during the time period of the alleged offenses. This assignment of error is overruled.

[2] Defendant argues next that the charges of second-degree rape and second-degree sexual offense should have been dismissed for failure of the State to prove lack of consent by the complainants to sexual activity with their father. We disagree.

"The elements of second-degree sexual offense are: (1) a person engages in a sexual act; (2) with another person; and (3) the act is by force and against the person's will. *See* N.C.G.S. § 14-27.5(a) [(2003)]." *State v. Tucker,* 154 N.C. App. 653, 655, 573 S.E.2d 197, 199 (2002), *disc. review denied,* 356 N.C. 691, 578 S.E.2d 597 (2003). "The elements of second-degree rape are that the defendant (1) engage in vaginal intercourse with the victim; (2) by force; and (3) against the victim's will. N.C. Gen. Stat. § 14-27.3 [(2003)]." *State v. Scercy,* 159 N.C. App. 344, 352, 583 S.E.2d 339, 344, *disc. review denied,* 357 N.C. 581, 589 S.E.2d 363 (2003). Defendant argues that the State failed to offer evidence of force. He contends that the complainants' testimony was that each of them had voluntarily consented to have sex with

their father. On this basis he asserts that the State failed to establish that the sexual activity between defendant the complainants was other than consensual. This argument is without merit.

The element of force may be established by evidence of constructive force:

> Constructive force, applied through fear, fright, or coercion, suffices to establish the element of force in second-degree rape. It may be demonstrated by proof that the defendant acted so as, in the totality of the circumstances, to create the reasonable inference that the purpose of such acts was to compel the victim to submit to sexual intercourse.

*Scercy*, 159 N.C. App. At 352, 583 S.E.2d at 344 (citing *State v. Etheridge*, 319 N.C. 34, 45, 352 S.E.2d 673, 680 (1987)). In *Etheridge*, the North Carolina Supreme Court held that evidence of constructive force did not necessarily require proof of actual physical threats where the defendant was the victim's parent:

> Sexual activity between a parent and a minor child is not comparable to sexual activity between two adults[.] . . . The youth and vulnerability of children, coupled with the power inherent in a parent's position of authority, creates a unique situation of dominance and control in which explicit threats and displays of force are not necessary to effect the abuser's purpose. . . . The child's knowledge of his father's power may alone induce fear sufficient to overcome his will to resist[.] . . . [T]he parent wields authority as another assailant might wield a weapon.

*Id.* at 47-48, 352 S.E.2d at 681-82. We also note that the line of cases relied upon by defendant was expressly overruled in *Etheridge*.

In the instant case, C.L. testified that she and her siblings were subjected to "physical and verbal abuse," slapped by their parents, and deprived of food. She submitted to defendant's advances because it raised her "rank" in the family, so that she "wasn't getting beat as often." She was frightened of defendant, who was often angry and aggressive, and who threatened to "hunt her down and kill her" if she ever revealed their sexual activity. S.L.'s testimony was that she was hit "a lot more" than C.L., and that when several investigations by DSS did not lead to improvements at home, she despaired of getting outside help to stop her father's sexual abuse. She also testified that she delayed reporting defendant out of fear. In addition, both girls testified that they were given alcohol before their first act of intercourse

with defendant. G.L. testified that defendant had punched him in the mouth, and that he was fearful of being hit or punched if he resisted or told anyone about defendant's abuse. Defendant also provided G.L. with alcohol, beginning at age six, and got him drunk before their sexual activities.

In the instant case, all three of the complainants testified that they were frightened of defendant, were subjected to physical abuse at home, and that defendant performed sexual acts on each one, notwithstanding the victim's pain or tears. We conclude that the State presented ample evidence of constructive force. This assignment of error is overruled.

---

[3] Defendant argues next that his convictions must be reversed on the grounds that he was deprived of the right to a unanimous verdict. We conclude this argument has some merit.

A criminal defendant's right to a unanimous jury verdict is guaranteed by the North Carolina Constitution. *See* N.C. Const. art I, § 24, and N.C.G.S. § 15A-1237(b) (2003). "To convict a defendant, the jurors must unanimously agree that the State has proven beyond a reasonable doubt each and every essential element of the crime charged." *State v. Jordan*, 305 N.C. 274, 279, 287 S.E.2d 827, 831 (1982). Further, the failure to object to alleged errors by the trial court that violate a defendant's right to a unanimous verdict does not waive his right to raise the question on appeal. *State v. Ashe*, 314 N.C. 28, 39, 331 S.E.2d 652, 659 (1985)).

Our determination of whether the trial court's instructions to the jury violate the right to a unanimous verdict requires us to "examine the verdict, the charge, the jury instructions, and the evidence to determine whether any ambiguity as to unanimity has been removed." *State v. Petty*, 132 N.C. App. 453, 461-62, 512 S.E.2d 428, 434 (1999). A defendant's right to a unanimous verdict may be compromised by jury instructions that allow the jury to convict a defendant without requiring unanimity on the issue of which criminal offense the defendant committed. *State v. Diaz*, 317 N.C. 545, 346 S.E.2d 488 (1986).

We find it useful to review several scenarios, each with some relevance to the instant case, in which the issue of jury unanimity commonly arises in child sex offense cases. The first of these occurs when a young child is abused by "an abuser residing with the child . . . [who] perpetuate[s] the abuse so frequently . . . that the young child loses any frame of reference in which to compart-

mentalize the abuse into distinct and separate transactions. Such evidence of abuse has been termed generic evidence." *R.L.G. v. State*, 712 So. 2d 348, 356 (1997) (internal quotation marks omitted). The victim's "generic testimony" may describe a *pattern* of abuse ("every time mama went to the store") rather than specific incidents ("after the July 4th parade"). Thus, a concern arises because the jury is not presented with a specific act upon which they unanimously may agree.

In response to this recurring problem, several jurisdictions have enacted criminal statutes that do not require evidence of particular incidents for prosecution. *See, e.g., State v. Fortier*, 146 N.H. 784, 789-90, 780 A.2d 1243, 1249-50 (2001) ("A continuous course of conduct crime, however, does not require jury unanimity on any specific, discrete act . . . [l]ike other jurisdictions that have adopted pattern statutes . . . our legislature created [this statute] to respond to the legitimate concern that many young victims, who have been subject to repeated, numerous incidents of sexual assault over a period of time by the same assailant, are unable to identify discrete acts of molestation."). The North Carolina legislature has not adopted a statute criminalizing an ongoing pattern of sexual abuse when the victim is unable to reconstruct the specific circumstances of any one incident. In at least one case, *State v. Wiggins*, 161 N.C. App. 583, 589 S.E.2d 402 (2003), this Court upheld a conviction for second degree rape that was apparently based upon such "generic testimony." However, there is no apparent statutory or common law authority that would permit the return of more than one indictment based on the same generic testimony. That is, there are no cases upholding two or more convictions, all based on generic testimony that, *e.g.*, "he sexually assaulted me at least once a week for several months." Another source of concern stems from jury instructions that are delivered disjunctively and authorize conviction upon a finding that the defendant engaged in **either** "X" or "Y" behavior. In this regard, our jurisprudence has drawn a distinction between disjunctive instructions on alternative *means* of committing an offense, and alternative *separate criminal offenses*:

> [A] disjunctive instruction, which allows the jury to find a defendant guilty if he commits either of two underlying acts, *either of which is in itself a separate offense*, is fatally ambiguous because it is impossible to determine whether the jury unanimously found that the defendant committed one particular offense. . . . [I]f the trial court merely instructs the jury disjunc-

tively as to various alternative acts *which will establish an element of the offense*, the requirement of unanimity is satisfied.

*State v. Lyons*, 330 N.C. 298, 302-03, 412 S.E.2d 308, 312 (1991). Thus, "in [*State v.*] *Diaz*, [317 N.C. 545, 346 S.E.2d 488 (1986)], the Court held that a disjunctive instruction resulted in an ambiguous verdict since the Court would not determine whether the jury unanimously convicted the defendant of a particular crime where each activity instructed on constituted a separate, discrete offense[.]" *State v. Alford*, 339 N.C. 562 576-77, 453 S.E.2d 512, 520 (1995).

In the context of cases wherein a defendant is charged with a single sexual offense, but the evidence supports more than one type of sexual act, our appellate courts have held that "a jury need not be unanimous as to which of several sex acts it finds to support a conviction for indecent liberties[,]" as the particular sex acts are considered alternative means of committing the offense, rather than separate offenses. *State v. McCarroll*, 336 N.C. 559, 566, 445 S.E.2d 18, 22 (1994) (citing *State v. McCarty*, 326 N.C. 782, 392 S.E.2d 359 (1990)). The same reasoning has been applied to charges of first degree sexual offense. This Court has noted that "our Supreme Court's determination that first-degree sexual offense is a single wrong for unanimity purposes requires us to conclude that charging a defendant with a separate count of first-degree sexual offense for each alternative sexual act performed in a single transaction would result in a multiplicious indictment." *Petty, id.* Thus, where a defendant is charged with first or second degree sexual offense, based upon evidence that he engaged in several sexual acts during a single incident, these acts should be considered by the jury as being alternative means by which the State may prove the "sexual act" element of **a single criminal offense**.

Jury unanimity is also at issue when evidence is presented of a greater number of separate criminal offenses than the defendant is charged with. *See State v. Holden*, 160 N.C. App. 503, 586 S.E.2d 513 (2003). In *Holden*, the jury convicted defendant of two counts of rape, following presentation of evidence of at least five separate incidents. This Court noted that the trial court's instructions "made no attempt to distinguish" among the offenses and held that:

> [T]he effect of the instruction in the case *sub judice* is to permit the jury to return guilty verdicts without agreeing . . . on which two particular incidents of statutory rape defendant was guilty [of.] . . . Thus, without any instruction differentiating between the

multiple counts, it was possible for a jury to return a verdict of guilty of two counts of statutory rape with some jurors believing defendant guilty of the incidents in the van, and others believing defendant guilty of two incidents at the victim's grandmother's house, or any number of other combinations.

*Id.* at 508, 586 S.E.2d at 517.

There are several ways to protect a defendant's right to a unanimous verdict when the evidence might support more separate offenses than the number of verdict sheets submitted to the jury. Unanimity is assured if before the jury begins its deliberations the State elects which particular criminal offense it will proceed on for a given indictment or verdict sheet. Or, where there is evidence of several incidents, any one of which might support conviction of a separate criminal offense, the trial court may protect the defendant's right to a unanimous verdict by instructing the jury that they must be unanimous as to the particular criminal offense that the defendant committed. Accordingly, the North Carolina Supreme Court has found no violation of the defendant's right to a unanimous verdict where "the trial judge submitted a specific instruction with respect to unanimity of verdict as to each indictment and also assigned correlating specific alleged acts of sexual offense to each indictment." *State v. Kennedy*, 320 N.C. 20, 25, 357 S.E.2d 359, 362 (1987).

In the vast majority of jurisdictions that have analyzed this issue, these two mechanisms for protecting the right to a unanimous verdict are characterized as the "either-or" rule. That is, when there is evidence of a greater number of separate criminal offenses than the number of counts submitted to the jury, **either** the State must elect one offense per charge, **or** the trial court must instruct the jury that they are required to agree unanimously on the offense committed. A leading case on the either/or rule is *State v. Petrich*, 101 Wash.2d 566, 572, 683 P.2d 173, 178 (1984):

When the evidence indicates that several distinct criminal acts have been committed, . . . jury unanimity must be protected. . . . The State may, in its discretion, elect the act upon which it will rely for conviction. Alternatively, if the jury is instructed that all 12 jurors must agree that the same underlying criminal act has been proved beyond a reasonable doubt, a unanimous verdict on one criminal act will be assured. When the State chooses not to elect, this jury instruction must be given to ensure the jury's understanding of the unanimity requirement.

*See also, e.g., State v. Arceo*, 84 Haw. 1, 32-33, 928 P.2d 843, 874-75 (Haw. 1996):

> [W]hen separate and distinct culpable acts are subsumed within a single count charging a sexual assault . . . the defendant's constitutional right to a unanimous verdict is violated unless . . . (1) at or before the close of its case-in-chief, the prosecution is required to elect the specific act upon which it is relying to establish the "conduct" element of the charged offense; or (2) the trial court . . . advises the jury that all twelve of its members must agree that the same underlying criminal act has been proved beyond a reasonable doubt.

Although North Carolina has never adopted the "either/or" rule *per se*, our appellate cases have employed similar reasoning, and found no violation of a defendant's right to a unanimous verdict unless the evidence reveals a greater number of separate criminal offenses than the number of charges submitted to the jury. For example, in *State v. Wiggins*, 161 N.C. App. 583, 589 S.E.2d 402 (2003), the defendant was convicted of two counts of sexual offense, and five counts of statutory rape. As in the instant case, neither the indictments, verdict sheets, nor the trial court's instructions, associated a given verdict sheet or indictment with any particular incident. The victim testified at trial to two specific incidents of sexual offense and four distinct instances of statutory rape. Significantly, the victim testified to only one sexual act in each incident. In this factual context, the Court noted that as regards the charges of sexual offense, "since [the victim] testified to only two incidents qualifying as statutory sexual offenses under section 14-27.7A(a), there was no possibility the jury could not have been unanimous in its vote on these two offenses." The Court also held that as the victim "testified to four specific occasions she could describe in detail during which defendant had sexual intercourse with her[,]" defendant's conviction of four counts of rape did not violate defendant's right to a unanimous verdict.[1] *Id.* at 593, 589 S.E.2d at 409.

Defendant herein was indicted for sixteen offenses in three counties, as follows:

1. Currituck County, victim C.L.: two charges of second-degree rape, one charge second-degree sex offense.

---

1. The fifth count of statutory rape was supported by the victim's "generic testimony" that "defendant had sexual intercourse with her five or more times a week" without specifying any particular incident.

2. Currituck County, victim S.L.: two charges of second-degree sex offense, one charge second-degree rape, one charge indecent liberties.

3. Camden County, victim C.L.: one charge of second-degree rape, one charge second-degree sex offense, one charge indecent liberties.

4. Camden County, victim S.L.: one charge second-degree sex offense.

5. Pasquotank County, victim G.L.: five charges of second-degree sex offense.

Under N.C.G.S. § § 14-27.5 (a)(1). (2003), a person commits a second degree sex offense if he "engages in a sexual act with another person by force and against the will of the other person[.]" A "sexual act" includes "cunnilingus, fellatio, analingus, or anal intercourse, . . . [and] also means the penetration, however slight, by any object into the genital or anal opening of another person's body[.]" N.C.G.S. § 14-27.1(4) (2003).

Comparison of the evidence adduced at trial with the charges brought against defendant reveals that, with regards to the charges of second-degree sex offense, the defendant's right to a unanimous verdict was compromised. In making this determination, we have not considered evidence that was admitted under North Carolina Rules of Evidence 404(b) for the limited purpose of shedding light on the defendant's motive and intent. As regards two categories of charges, there was evidence of a greater number of offenses than the number of charges: (1) the five charges of second-degree sex offense committed against G.L., arising in Pasquotank County; and (2) the single charge of second-degree sex offense committed against C.L. in Currituck County. Additionally, with regard to the charges of second-degree sex offense committed against each of the three victims, the jury was permitted to consider evidence of various sexual acts without any instruction from the court on which acts should be grouped together and evaluated as alternative means to establish the "sexual act" element of a given individual criminal offense.

C.L. testified that on one occasion in Currituck County, defendant woke her up in the middle of the night, took her downstairs to watch a pornographic movie, and performed oral sex on her. She testified that on another occasion, defendant asked her to stay home from school. During the course of that day, defendant "pour[ed] wine in

[her] vagina" and then performed oral sex. Later, he penetrated her digitally, and applied mineral oil to her vagina, before massaging her with an electric vibrator. Defendant was charged with only one second degree sex offense against C.L. in Currituck County. However, even if we consider certain of the defendant's actions to comprise a continuous single offense (e.g., pouring wine into C.L.'s vagina, and then performing oral sex) the evidence clearly showed more than one separate incident, each of which was a separate criminal offense. Further, each incident involved multiple sexual acts. Thus, one juror might consider the "sexual act" element to be satisfied by evidence pertaining to one incident, while another juror based his verdict on evidence from a different transaction.

Defendant was also charged with committing five second-degree sex offenses against G.L., all in Pasquotank County. G.L. testified about no fewer than six individual incidents involving acts of anal or oral sex performed on or by the defendant. In most of these incidents, there was evidence of several types of sexual activity occurring in one incident, such as oral sex, anal sex, and attempted anal penetration. G.L. **also** offered "generic testimony" that the defendant committed many other second-degree sex offenses against him, both oral and anal sex, but that it had happened so many times he could not single out any other particular instances. Again, the jury was not instructed as to: (1) not returning more than one verdict based on G.L.'s "generic" testimony that there were numerous other incidents; (2) the need to consider various sexual acts occurring in one incident, not as separate criminal offenses, but as alternative means of establishing the "sexual act" element of a single offense; or (3) the need for unanimity on a specific sexual incident.

S.L. testified regarding an incident of sexual abuse occurring after a truck trip with the defendant. Evidence was presented that during this incident the defendant engaged in digital penetration, oral sex, and the application of a lubricant on S.L.'s external genitalia and in her vagina. On the basis of this testimony, the defendant was convicted of **two** counts of second-degree sexual offense. However, each of the alleged sexual acts occurred during the same incident, and were alternative means of establishing the element of commission of a sexual act. North Carolina case law suggests that, for a given second-degree sexual offense, the jury need not be unanimous as to which sexual act the defendant committed, provided they are unanimously agreed that the defendant committed one or another of the alleged sexual acts. However, as the jury was **not** instructed that they

must be unanimous on the particular act committed, evidence of several different sexual acts must be considered as alternative means to establish an element of a single criminal offense. Accordingly, while we may safely conclude that the jury unanimously agreed on defendant's commission of one second degree sexual offense, the second conviction must be reversed.

We conclude that as regards the charges of second degree sexual offense against C.L. in Currituck County, and against G.L. in Pasquotank County, there was evidence of a greater number of separate criminal offenses than were submitted to the jury. Regarding charges of sexual offense against G.L., there was also generic testimony, with no accompanying instructions on limiting its consideration to one criminal offense. Regarding charges of second-degree sex offense committed against all three victims, the jury was allowed to consider evidence of numerous criminal sexual acts with no guidance on separating them into separate criminal offexnses. Further, although the indictments and verdict sheets were validly drawn, they did not remove the ambiguity in the jury's verdict. None of the verdict sheets associated the offense number with a given incident or separate criminal offense. Nor did the trial court's instructions make any attempt to separate the individual criminal offenses, or guide the jury to identify a given verdict sheet with a corresponding instance of alleged sexual abuse. We conclude, upon review of the charges, the evidence, and the jury instructions, that the jury's verdicts of guilty are ambiguous as regards the charge of second-degree sex offense against C.L. in Currituck County, the five charges of second-degree sex offense against G.L. in Pasquotank County, and one of the charges of second-degree sex offense against S.L. in Currituck County.

We have reviewed defendant's remaining arguments and find them to be without merit. For the reasons discussed above, we conclude that defendant's convictions in cases Currituck County 01-CRS-212, and 219, and Pasquotank County 02-CRS-1331 through 1335, must be reversed. We find no error in defendant's nine other convictions.

Reversed in part; No error in part.

Judges HUNTER and McCULLOUGH concur.