STATE OF NORTH CAROLINA v. JOHNNY CLAY BREWER

No. COA04-1160

(Filed 19 July 2005)

**1. Indecent Liberties; Sexual Offenses— first-degree sexual offense—right to a unanimous jury—allegations of greater number of separate criminal offenses than defendant was charged**

The trial court did not err in a double first-degree sexual offense and triple taking indecent liberties with a child case by its instructions to the jury and did not violate defendant's right to a unanimous verdict under the North Carolina Constitution even though defendant contends that the instructions did not clearly specify the alleged offenses the jury was to consider and that evidence was presented of a greater number of separate criminal offenses than those for which defendant was charged, because: (1) in regard to the first-degree sexual offense charges, the evidence at trial gave rise to only two possible incidents of cunnilingus on 31 May 2002 and 8 June 2002 and the trial court's instructions limited the jury's consideration of the first-degree sexual offenses both to the approximate dates on which they

were alleged to have occurred and to the specific acts of cunnilingus; (2) there is no risk of a lack of unanimity where defendant was charged with and convicted of the same number of offenses, and the evidence supported that number of offenses; (3) in regard to the taking indecent liberties with a child charges, the charge, verdict sheets, and jury instructions limited the jury's consideration to "on or about" specific dates; (4) in regard to 02 CRS 55606 and 02 CRS 55580, using the same underlying act of cunnilingus to support convictions for both first-degree sexual offense and indecent liberties does not violate defendant's constitutional protection against double jeopardy and the jury was unanimous in its findings; (5) in regard to 02 CRS 55579, the jury was unanimous as to the "slick-legging" incident; and (6) the trial court carefully associated each charge and jury instruction with a specific case number, date, and verdict sheet.

**2. Sentencing— clerical error—wrong statute cited**

The judgments in two first-degree sexual offense cases are remanded for correction of a clerical error in incorrectly citing N.C.G.S. § 14-27.7A as the statute under which defendant was convicted, because the victim was under thirteen years of age and the judgment sheets should reflect N.C.G.S. § 14-27.4.

Appeal by defendant from judgment entered 7 November 2003 by Judge James C. Spencer, Jr. in Alamance County Superior Court. Heard in the Court of Appeals 6 June 2005.

*Roy Cooper, Attorney General, by Anne M. Middleton, Assistant Attorney General, for the State.*

*Staples Hughes, Appellate Defender, by Benjamin Dowling-Sendor, Assistant Appellate Defender, for defendant.*

MARTIN, Chief Judge.

Defendant was charged with three counts of first-degree sexual offense, three counts of taking indecent liberties with a child, and three counts of crimes against nature. Upon motion by defendant at the close of the State's evidence, the trial court dismissed the three counts of crimes against nature and one count of first-degree sexual offense alleged to have occurred on or about 14 June 2002. The jury found defendant guilty of the five remaining charges. The trial court imposed two consecutive sentences of 384 to 470 months imprisonment.

STATE v. BREWER

[171 N.C. App. 686 (2005)]

The State presented evidence at trial which tended to show the following: defendant lived with his girlfriend, S.E., in Alamance County near Burlington, North Carolina. M.E., S.E.'s eight-year-old daughter, lived with her father. After not seeing her mother for over six months, M.E. went to visit her at her home with defendant several times in the spring and early summer of 2002. The first few weekends that M.E. visited, she testified that no "bad touching" occurred. On the fourth weekend she visited, M.E. testified that she walked in on her mother and defendant having sex. Although they saw M.E. enter the room, they did not stop having intercourse or cover their bodies. When they stopped, S.E. asked M.E. if she wanted to do it too. M.E. said no, and then defendant performed oral sex on S.E. in front of M.E. They again asked if M.E. wanted to participate, and this time M.E. agreed. Defendant began to perform oral sex on M.E., but he stopped when M.E. said she did not like it. S.E.'s testimony corroborated M.E.'s description of these events. M.E. did not tell her father or anyone else about what happened that weekend.

Beginning May 31, the last day of school, M.E. went to stay with her mother and defendant for two weeks. At trial, M.E. and S.E. testified to numerous sexual acts that occurred between defendant and M.E. during this two-week visit. M.E. testified that approximately the day after she arrived, defendant put some "slick stuff" on his penis, and while she lay on her stomach, he put his penis between her legs above her knees. He moved his body up and down for about five minutes. He did not put his penis in her vagina. M.E. testified that this happened two or three times during her two-week visit. M.E. also testified that later the same night, defendant licked her breasts.

S.E. testified that on the first or second day of the visit, she talked M.E. into letting defendant perform oral sex on her. At the time, S.E., M.E., defendant, and defendant's six-year-old son, J.D.B., were all in the bedroom naked. After defendant performed oral sex on M.E., he asked J.D.B. if he wanted to try it. According to S.E.'s testimony, J.D.B. put his mouth on M.E.'s vagina.

S.E. further testified that defendant's ten-year-old niece, J.B., came to visit during the middle weekend of M.E.'s two-week visit. That Saturday night, she and M.E. convinced J.B., who was hesitant to participate, to take her clothes off along with them. They went into the bedroom with defendant, and S.E., M.E., and J.B. lay down on the bed with S.E. in the middle. Defendant performed oral sex on all three of them. M.E.'s testimony corroborated this event, but she could not remember exactly when it took place.

S.E. described an act, which she called "slick-legging," that defendant had done to M.E. about three times during the two-week visit. This was the same act M.E. described where defendant, using a lubrication, put his penis between M.E.'s legs while she lay on her stomach. S.E. said one of the times defendant performed this act on M.E. was on the Friday of the last week of the two-week visit, which was 14 June 2002. M.E. went back to her father's house the next day.

S.E. testified as to other sexual acts which occurred during M.E.'s two-week visit, including: M.E. took a shower with defendant two or three times; defendant asked M.E. to put his penis in her mouth, and M.E. put her mouth on the side of his penis because she was afraid she would choke; they watched pornographic movies; and they all walked around the house naked.

The day after M.E. went home, she told her father what had happened. Her father called the sheriff, and the next morning, he took her to Dr. Louis Allen Dean, a family practitioner in Thomasville, North Carolina. Dr. Dean testified that M.E. told him she had slept with her mother and her mother's boyfriend naked on several occasions. At least once, her mother's boyfriend had licked her privates and coerced her into performing oral sex on him.

Defendant was originally arrested on an unrelated charge, and he and S.E. were both subsequently charged in this case. Defendant's parents posted S.E.'s $50,000 bond, mortgaging their property to do so. According to S.E., they told her to say she had made everything up and helped her come up with details of an alternate story. They threatened to go off her bond and let her return to jail if she did not comply. S.E. met with an attorney defendant's parents hired for her and told him she had made up the allegations to get custody of her baby with which she was six months pregnant and M.E. The attorney had her write and sign an affidavit to this effect, but S.E. testified that the affidavit was false and was a product of defendant's parents' coercion. S.E. ultimately entered into a plea agreement with the State in which she agreed to plead guilty to one count of indecent liberties with a child, register as a sexual offender for ten years, and testify against defendant.

At trial, S.E.'s son from a previous marriage, D.C., testified over defendant's objection that S.E. and defendant engaged in fellatio in front of him and defendant's nephew, T.B., once when the two boys were visiting defendant's home. According to D.C., defendant wore a

ring with metal studs around his penis. This conduct did not take place while M.E. was visiting but on a different occasion.

At the close of the State's evidence, defendant moved to dismiss all of the charges against him. The trial court allowed his motion with respect to the three counts of crimes against nature and the count of first-degree sexual offense occurring on or about 14 June 2002. Five charges remained after the motion was allowed, including three charges of indecent liberties occurring on or about 31 May, 8 June, and 14 June 2002, and two charges of first-degree sexual offense occurring on or about 31 May and 8 June 2002.

Defendant presented evidence which tended to show the following: defendant's nephew, T.B., testified that while he was visiting S.E. and defendant when D.C. was also visiting, he never saw defendant's penis, a ring with metal spikes, or any sexual activity. J.B. testified that no one had ever touched her private parts while she was visiting defendant, and that she had never seen anyone touch M.E.'s private parts. She also testified that M.E. told her that M.E., S.E., and the new baby were going to move into defendant's house because defendant was going to jail.

J.B.'s sister, N.B., testified that S.E. told her she had set defendant up in order to move into defendant's house with M.E. and the baby. She said S.E. told her she regretted making everything up, and several times N.B. heard S.E. on the phone with defendant saying she loved him, wanted to marry him, and would recant the allegations. N.B. also testified that J.B. told her nothing inappropriate had happened between her and defendant. J.B.'s mother testified that J.B., upon numerous inquiries, maintained that nothing inappropriate had ever happened to her while visiting defendant.

Octavis White, the attorney hired by defendant's parents to represent S.E., and his law partner, George Hunt, testified that S.E. told them she made up false allegations against defendant to get custody of M.E. and her unborn child. David Harris, another attorney, also testified S.E. told him she made up the allegations. Mr. Harris said S.E. told him she showed pornographic movies and discussed sexual acts with M.E. so that M.E. could describe them to investigators.

Defendant's neighbor, Jean Wakefield, testified that S.E. also told her she had M.E. watch pornographic movies in order to accuse defendant of sexual abuse. Mrs. Wakefield said that when she would stop by defendant's home unannounced, everyone there was dressed

normally. Defendant's mother also testified that S.E. told her the allegations were false. She denied conditioning S.E.'s bond on S.E. recanting the allegations.

The jury found defendant guilty of three counts of taking indecent liberties with a child occurring on or about 31 May, 8 June, and 14 June 2002, and two counts of first-degree sexual offense occurring on or about 31 May and 8 June 2002. The trial court consolidated the five convictions into two judgments, found that defendant had a prior felony conviction record of VI, and imposed two consecutive sentences of 384 to 470 months imprisonment. Defendant appeals.

---

[1] Defendant's sole argument on appeal is that the trial court's instructions to the jury were fatally ambiguous and thereby violated defendant's right to a unanimous jury under the North Carolina Constitution. Under the North Carolina Constitution, "[n]o person shall be convicted of any crime but by the unanimous verdict of a jury in open court." N.C. Const. art. 1, § 24; N.C. Gen. Stat. § 15A-1237(b) (2003). Although defendant did not object to the jury instructions on the grounds of unanimity at trial, "[v]iolations of constitutional rights, such as the right to a unanimous verdict . . . are not waived by the failure to object at trial and may be raised for the first time on appeal." *State v. Wiggins*, 161 N.C. App. 583, 592, 589 S.E.2d 402, 409 (2003).

Defendant argues that although the jury only considered five charges of sexual abuse, the evidence presented showed many more incidents of abuse during M.E.'s two-week visit at defendant's home. The jury, defendant contends, could have considered any number of these additional incidents in reaching its verdict. Specifically, the bills of information by which defendant was charged alleged that one count of indecent liberties and one count of first-degree sexual offense occurred on or about 31 May 2002, one count of indecent liberties and one count of first-degree sexual offense occurred on or about 8 June 2002, and one count of indecent liberties occurred on or about 14 June 2002.

We begin by addressing the charges of first-degree sexual offense. First-degree sexual offense is defined as "a sexual act: (1) [w]ith a victim who is a child under the age of 13 years and the defendant is at least 12 years old and is at least four years older than the victim." N.C. Gen. Stat. § 14-27.4(a)(1) (2003). A "sexual act" includes "cunnilingus . . . [and] the penetration, however slight, by any object into

the genital or anal opening of another person's body." N.C. Gen. Stat. § 14-27.1(4) (2003).

Because there is no evidence of any act of vaginal penetration of M.E., the two charges of first-degree sexual offense are based on the incidents in which defendant allegedly performed cunnilingus on M.E. The evidence at trial gave rise to only two possible incidents of cunnilingus. Statements made by S.E. and M.E. which may have described additional incidents of cunnilingus were admitted only for corroborative, rather than substantive, purposes.

The first incident described at trial occurred the first or second day of M.E.'s two-week visit. The evidence indicated that M.E. arrived for her two-week visit sometime between 30 May and 1 June 2002. S.E. testified that she convinced M.E. to let defendant perform oral sex on her. At the time, S.E., M.E., defendant, and defendant's son J.D.B. were all in the bed together naked. This testimony corresponds with the bill of information and the verdict sheet submitted to the jury, which each fix the date of the offense as "on or about" 31 May 2002.

The second incident of cunnilingus described at trial took place during the middle weekend of M.E.'s visit when defendant's niece J.B. was also visiting. S.E. testified that Saturday night, she, M.E., and J.B. took off their clothes and lay down on the bed while defendant performed oral sex on all of them. M.E. also described this event, although she could not say when it occurred. The date of the middle Saturday of M.E.'s visit was 8 June 2002. The bill of information alleges that this offense took place "on or about" 8 June 2002, and the verdict sheet clearly directs the jury to consider defendant's guilt or innocence of an offense occurring on that date.

We have previously held that when a question of jury unanimity is raised, "we must examine the verdict, the charge, the jury instructions, and the evidence to determine whether any ambiguity as to unanimity has been removed." *State v. Petty,* 132 N.C. App. 453, 461-62, 512 S.E.2d 428, 434, *disc. review denied,* 350 N.C. 598, 537 S.E.2d 490 (1999). Having examined the verdict, the charge, and the evidence, we now turn to the trial court's jury instructions on first-degree sexual offense, to which defendant assigns error. The trial court instructed the jury twice on the crime of first-degree sexual offense, once for Case No. 02 CRS 55606, in which the offenses were alleged to have occurred on or about 31 May 2002, and once for Case No. 02 CRS 55580, in which the offenses were alleged to have oc-

curred on or about 8 June 2002. In both instructions, the trial court limited the jury's consideration of first-degree sexual offense to the act of cunnilingus, stating that "a sexual act here means cunnilingus, which is any touching, however slight, by the lips or the tongue of one person to any part of the female sex organ of another."

This Court has held that "the trial court may protect the defendant's right to a unanimous verdict by instructing the jury that they must be unanimous as to the particular criminal offense that the defendant committed." *State v. Lawrence*, 165 N.C. App. 548, 559, 599 S.E.2d 87, 95, *temp. stay allowed*, 359 N.C. 73, 603 S.E.2d 885 (2004), *disc. review allowed*, 359 N.C. 413, 612 S.E.2d 634 (2005) (*Lawrence I*). Here, the trial court instructed the jury that it must "agree unanimously" on the particular offense of cunnilingus. The trial court's instructions limited the jury's consideration of the first-degree sexual offenses both to the approximate dates on which they were alleged to have occurred and to the specific act of cunnilingus. These dates and acts correspond with the evidence presented at trial. Defendant's contention that "the trial court's jury instructions did not clearly specify the alleged offenses the jury was to consider" is not supported by the record.

We also reject defendant's contention that there was evidence presented "of a greater number of separate criminal offenses than the defendant is charged with." *See Lawrence I*, 165 N.C. App. at 558, 599 S.E.2d at 95. There is no risk of a lack of unanimity where the defendant was charged with and convicted of the same number of offenses, and the evidence supported that number of offenses. *State v. Wiggins*, 161 N.C. App. 583, 593, 589 S.E.2d 402, 409 (2003). In the present case, defendant was charged with two discrete first-degree sexual offenses, there was evidence of each offense, and defendant was convicted of each. Therefore, defendant's argument that he was denied the right to unanimous verdicts with respect to the charges of first-degree sexual offense is overruled.

We now turn to the charges of indecent liberties. N.C. Gen. Stat. § 14-202.1 states:

(a) A person is guilty of taking indecent liberties with children if, being 16 years of age or more and at least five years older than the child in question, he either:

(1) Willfully takes or attempts to take any immoral, improper, or indecent liberties with any child of either sex under

the age of 16 years for the purpose of arousing or gratifying sexual desire; or

(2) Willfully commits or attempts to commit any lewd or lascivious act upon or with the body or any part or member of the body of any child of either sex under the age of 16 years.

(b) Taking indecent liberties with children is punishable as a Class F felony.

N.C. Gen. Stat. § 14-202.1 (2003). We will again examine "the verdict, the charge, the jury instructions, and the evidence" to determine whether, on the charges of indecent liberties, "any ambiguity as to unanimity has been removed." Petty, 132 N.C. App. at 461-62, 512 S.E.2d at 434.

Defendant was charged with three counts of indecent liberties. The charge, verdict sheets, and jury instructions limited the jury's consideration of indecent liberties to "on or about" specific dates. Case No. 02 CRS 55606 is limited to "on or about" 31 May 2002; Case No. 02 CRS 55580 is limited to "on or about" 8 June 2002; and Case No. 02 CRS 55579 is limited to "on or about" 14 June 2002.

First we address Case No. 02 CRS 55606, which alleges first-degree sexual offense and indecent liberties took place "on or about" 31 May 2002. M.E. testified at trial that about the second day of her visit, defendant engaged in an act of "slick-legging" with her, and later that same night licked her breasts. S.E. testified that the first or second day of M.E.'s visit, defendant performed cunnilingus on M.E. Because indecent liberties does not merge with and is not a lesser included offense of first-degree sexual offense, the evidence presented in this case on cunnilingus may also support a conviction for indecent liberties. State v. Lawrence, 170 N.C. App. 200, 612 S.E.2d 678, temp. stay allowed, 359 N.C. 640, —— S.E.2d ——, (June 2, 2005) (No. 293A05) (Lawrence II, a case unrelated to Lawrence I). Therefore, any of these three acts could support a conviction of indecent liberties under N.C. Gen. Stat. § 14-202.1, and defendant correctly alleges that there was evidence presented "of a greater number of separate criminal offenses than the defendant is charged with." Lawrence I, 165 N.C. App. at 558, 599 S.E.2d at 95.

However, we have already determined that the jury unanimously found defendant committed the act of cunnilingus on or near 31 May 2002. This unanimous finding is also sufficient to support the conviction of indecent liberties under Case No. 02 CRS 55606. Using the

same underlying act to support convictions for both first-degree sexual offense and indecent liberties does not violate defendant's constitutional protection against double jeopardy. *State v. Manley*, 95 N.C. App. 213, 217, 381 S.E.2d 900, 902, *disc. review denied*, 325 N.C. 712, 388 S.E.2d 467 (1989). Defendant's argument with respect to Case No. 02 CRS 55606 is overruled.

Case No. 02 CRS 55580 alleges a first-degree sexual offense and a charge of indecent liberties "on or about" 8 June 2002, the middle Saturday of M.E.'s visit. The only sexual incident associated with that particular date was when defendant performed cunnilingus on M.E., J.B., and S.E. on the bed. Again, the conviction in this case on first-degree sexual offense by cunnilingus indicates the jury unanimously found this incident occurred. Because the same act of cunnilingus is sufficient to support a conviction of indecent liberties in addition to first-degree sexual offense, *Manley*, 95 N.C. App. at 217, 381 S.E.2d at 902, and because no other evidence specifically relates to 8 June 2002, we believe the jury was unanimous in its finding of indecent liberties in Case No. 02 CRS 55580.

Finally, in Case No. 02 CRS 55579, the sole count for the jury to consider was indecent liberties alleged to have occurred on or about 14 June 2002, the last Friday of M.E.'s visit. The only evidence at trial specifically relating to that date was S.E.'s description of a "slick-legging" incident. Because the trial court, through the verdict sheets and its instruction, specifically limited the jury's consideration of this charge to on or near 14 June 2002, the end of M.E.'s stay, we conclude the jury was also unanimous as to the "slick-legging" incident that occurred on or about the last Friday of M.E's visit.

The present case is distinguishable from other cases in which error has been found. In *State v. Holden*, 160 N.C. App. 503, 586 S.E.2d 513 (2003), *aff'd without precedential value*, 359 N.C. 60, 602 S.E.2d 360 (2004), defendant was charged with ten counts of statutory rape. The evidence supported five incidents of rape, and the jury convicted defendant of two counts. The trial court "made no attempt to distinguish among the ten different counts submitted to the jury." The indictments were "simply short form indictments . . . alleg[ing] defendant committed first degree statutory rape occurring within a time period between 1 November 1999 and 12 May 2000, without specifying any specific date for any offense." *Id.* at 507, 586 S.E.2d at 516. It was impossible to determine which two incidents of rape the jury actually agreed took place. Similarly, in *Lawrence I* and *Lawrence II*, the trial court made no attempt "to separate the indi-

vidual criminal offenses, or guide the jury to identify a given verdict sheet with a corresponding instance of alleged sexual abuse." *Lawrence I* at 563, 599 S.E.2d at 98; *see also Lawrence II, supra* (stating that unanimity is jeopardized if "the jury receives no guidance from the trial court or indication from the State as to which offenses are to be considered for which verdict sheets").

In the present case, there were numerous acts by defendant in addition to cunnilingus and "slick-legging" which could have supported a conviction on indecent liberties, including licking M.E.'s breasts, showering with M.E., and having M.E. touch his penis with her mouth. Had the trial court submitted this case to the jury for consideration without narrowing the time frame any further than the two-week visit, we would agree that it would be impossible to determine which sexual incidents supported the jury's finding on any given charge of indecent liberties. However, the trial court carefully associated each charge and jury instruction with a specific case number, date, and verdict sheet. The trial court gave three separate instructions on indecent liberties, distinguishing them by date and case number. Here, as in *State v. Wiggins*, 161 N.C. App. 583, 593, 589 S.E.2d 402, 409 (2003), defendant was charged with and convicted of the same number of offenses, and this Court found no lack of jury unanimity in that case.

[2] With respect to the trial court's instructions to the jury and the question of jury unanimity, we find no error. However, we remand for correction of a clerical error in the judgments, which incorrectly cite N.C. Gen. Stat. § 14-27.7A as the statute under which defendant was convicted of first-degree sexual offense. Because M.E. was under 13 years of age, the judgment sheets should reflect N.C. Gen. Stat. § 14-27.4 as the statute violated by defendant. N.C. Gen. Stat. § 14-27.4(a)(1) (2003).

No Error in the trial.

02 CRS 55580 Remanded for correction of clerical error.

02 CRS 55606 Remanded for correction of clerical error.

Judges WYNN and TIMMONS-GOODSON concur.