STATE OF NORTH CAROLINA v. MARKEITH RODGERS LAWRENCE

No. COA03-1038

(Filed 17 May 2005)

### 1. Sexual Offenses— first-degree sexual offenses—fatal variance between indictment and evidence

The judgments entered on each of defendant's six first-degree sexual offense convictions must be vacated due to a fatal variance between the offense alleged in each indictment and the evidence presented at trial, because: (1) none of the six indictments for first-degree sexual offense utilized the short-form indictment language authorized by N.C.G.S. § 15-144.2(b) to charge defendant with first-degree sexual offense pursuant to N.C.G.S. § 14-27.4(a)(1) on the theory that the alleged sexual offenses were committed against a victim under the age of thirteen years old; (2) the trial court instructed the jury regarding the first-degree sexual offense charges on the theory that the minor child was under the age of thirteen at the time of the alleged offenses, and not on the theory that the offenses were forcible as alleged in the indictments; (3) the State did not present any evidence that the alleged offenses were forcible as alleged in the indictments; and (4) defendant must be convicted, if convicted at all, of the particular offense charged in the warrant or bill of indictment.

### 2. Constitutional Law— right to unanimous jury—multiple sexual crimes

Defendant's judgments for three counts of indecent liberties and five counts of statutory rape are reversed and remanded for a new trial on those charges based on the risk of a nonunanimous jury verdict, because: (1) no jury instructions, indictment, or verdict sheet distinguished which incidents served as the bases of the jury's eight verdicts; and (2) there was evidence of more incidents presented than the respective charges.

Judge BRYANT concurring in part and dissenting in part.

Appeal by defendant from judgments entered 16 January 2003 by Judge Quentin T. Sumner in Nash County Superior Court. Heard in the Court of Appeals 28 April 2004.

**STATE v. LAWRENCE**

[170 N.C. App. 200 (2005)]

*Attorney General Roy Cooper, by Assistant Attorney General Amy C. Kunstling, for the State.*

*Everett & Hite, L.L.P., by Stephen D. Kiess, for defendant-appellant.*

ELMORE, Judge.

Defendant appeals from judgments entered upon jury verdicts finding him guilty of six counts of first-degree sexual offense, five counts of statutory rape, and three counts of taking indecent liberties with a child. After careful consideration, and for the reasons stated herein, we vacate the six judgments entered on convictions of first-degree sexual offense, reverse the remainder of the judgments entered against defendant, and remand for a new trial on the statutory rape and indecent liberties charges.

## I. Evidentiary Background

Since application of the evidence presented by the State is crucial to our analysis of the issues presented, our discussion of the evidence presented against defendant is detailed. The State's evidence presented at trial tended to show that over a period of approximately eighteen months in 1999 and 2000, defendant engaged in a variety of sexual acts with the victim, L.D. (Lucy)[1], beginning while Lucy was eleven years old. Defendant was living with, and later married to, Lucy's sister Sharlena during the period in which these acts occurred. Lucy resided with defendant and Sharlena after Lucy's mother died in August 2000, but spent many days and nights there prior to her mother's death.

### A. Indecent Liberties

Lucy testified that defendant's inappropriate conduct began in the summer of 1999, prior to the death of her mother, when she and defendant played a game in which defendant exposed himself to her and she lifted up her shirt for defendant. Lucy testified that later that summer, while spending the night with defendant and Sharlena in their home, she was lying on the sofa in the living room when defendant told her to lay down, got on top of her, pulled down his shorts, moved her nightgown and underwear to the side, and "tried to stick his private part into [her]." Lucy testified that no penetration occurred on this occasion because "[she] kept scooting up the couch

---

1. In consideration of this Court's priority of protecting the identity of minor children, any children are identified by their initials and the use of a pseudonym.

so he wouldn't." Lucy testified that she did not tell anyone about either of these incidents.

Lucy also testified that on one occasion during the summer of 1999, she and her younger sister D.D. (Debbie), then eight years old, were about to go swimming when defendant called them into his bedroom. Defendant, who was sitting on the bed with a towel wrapped around his waist, kissed Lucy and Debbie while masturbating. Defendant then laid down on the bed, removed the towel, and told Lucy to sit on top of him. She complied, and they simulated having sex, although defendant did not move Lucy's bathing suit out of the way. Debbie testified at trial and corroborated Lucy's testimony regarding this incident, as well as testifying that she once witnessed defendant put his hand up Lucy's shirt while they were watching a pornographic movie.

B. Rape

Lucy further testified that she and defendant had sexual intercourse a total of thirty-two times. The first incident of possible penetration happened in the living room during an evening in December 1999 when Lucy was staying with defendant and Sharlena because her mother was in the hospital. Sharlena was not at home that evening and at the time defendant was twenty-four years old while Lucy had just turned twelve. Lucy said that while her younger brother and sister were in another room,

> [defendant] told me to lay down. And I was at the edge of the couch and he told me to lay down and he tried it again. And as he was trying he stuck it—he almost did, and it was hurting so I was scooting on the couch and then I ran out of the room.

Following this incident in the living room, and later the same evening, defendant came into Lucy's room that she shared with Debbie and Sharlena's three-year-old son C.D. (Caleb). All three children were now asleep, but defendant awakened Lucy and told her to lay down on the couch in Caleb's room.

LUCY: [A]nd he did it.

. . .

STATE: And what do you mean when you say "he did it"?

LUCY: He had sex with me.

STATE: Did any of his body ever enter any of your body?

STATE v. LAWRENCE

[170 N.C. App. 200 (2005)]

LUCY: Yes, sir.

STATE: Please tell the ladies and gentlemen of the jury when you say he had sex with you, what do you mean? What did he do?

LUCY: He stuck his private part into mine.

STATE: Into your private part?

LUCY: Yes.

. . .

STATE: And that was the first time y'all actually had sex; is that right?

LUCY: Yes, sir.

Lucy testified that the next time she remembered that she had sex with defendant it took place in the living room, and that about half the time the two engaged in sex, "about fifteen times," it occurred in the living room, when Sharlena was "usually in her room asleep or gone to work."

STATE: Tell—please tell the jury anything you remember about having sex with [defendant] in the living room. Do you remember where in the living room it was?

LUCY: Most of the time it was on the couch and then sometimes on the floor.

STATE: Most of the time on the couch?

LUCY: (Nodded affirmatively.)

. . .

STATE: Do you remember any of the times that were on the couch specifically?

LUCY: Just one time I can remember.

STATE: That you remember specifically?

LUCY: Yes, sir.

STATE: Okay. Why do you remember that time?

LUCY: (Shrugged shoulders.) I don't know.

STATE: You just do?

LUCY: Yes sir.

. . .

STATE: Were there any other times that you all had sex on the couch in the living room?

LUCY: Not that I can remember.

STATE: Do you remember having sex in the living room any other times at all?

LUCY: Yes, sir.

Lucy also testified that immediately following a sex act involving a screwdriver, she and defendant had intercourse. Further, she testified of one specific incident of sex with defendant on the floor of the room she shared with Caleb. This incident was distinctive in part due to the fact that Sharlena nearly saw them in the act.

C. Sexual Offense

Lucy testified to four separate occasions in which defendant penetrated her vagina with a broom, a cucumber, a hairbrush, and a screwdriver, respectively. Each of these incidents occurred on different days, each while Lucy was twelve. She said defendant inserted the broom because "[h]e said he wanted to see how far it would go[;]" that he inserted the hairbrush "[t]o make him hard[;]" and that defendant "told [her] to play with [her]self" with the screwdriver. Lucy testified that almost every time they had sex, fellatio was also involved, and that on one occasion defendant partially inserted his penis into her anus.

STATE: Other than the times that you have described that [defendant] had sex with you, put his private in your private or put his penis in your vagina the times that you have described, did he ever put his penis in any other part of your body?

LUCY: Yes, sir.

STATE: What other parts of you body did he put his penis is [sic]?

LUCY: My mouth and my butt.

STATE: Do you remember how many times he put his penis in your butt?

LUCY: Only once but it wasn't the whole thing.

. . .

STATE: When did he—do you recall how many times he put his penis in your mouth?

LUCY: Almost every time we had sex.

COURT: Say it again.

LUCY: Almost all the time we had sex.

D. Supplemental Evidence

On 5 January 2001, Lucy's neighbor T.B. (Taylor), then twelve, spent the night with Lucy, who had been living with defendant and Sharlena since her mother's death in August 2000. Lucy testified that she fell asleep while watching television on the couch in the living room with defendant and Taylor. Lucy said that at some point she was awakened by "sucking noises" and became upset because she thought defendant was making "[Taylor] suck him like he did [Lucy]." Taylor testified at trial, and denied performing oral sex on defendant at any time.

Lucy then went to the home of her aunt, Jannis King, who the next day overheard her talking to defendant on the telephone and crying. Ms. King suspected that defendant had been "messing" with Lucy and shared her suspicions with Lucy's father, who together with Ms. King, took Lucy to Nash General Hospital to be examined on 7 January 2001.

At Nash General Hospital, Lucy spoke to a nurse, a police officer, and a victim's advocate. She denied having sex with defendant to each of them. When questioned as to the denials, Lucy testified that she did this because she was scared of defendant, and also because she loved defendant and did not want him to go to jail. Lucy told the victim's advocate that her father had touched her inappropriately when she was eight years old, and she told the police officer that she had had sex before, although she did not specify with whom. The findings from Lucy's physical examination were consistent with someone who had engaged in consensual sex.

At trial, three personnel from Lucy's school testified as well as the officer who investigated her case. A written statement by Lucy made during the officer's investigation was introduced. The statement was materially consistent with her trial testimony, although there was

some discrepancy as to whether she and defendant began having intercourse in the summer of 1999, when Lucy was eleven, or after she turned twelve in December 1999.[2]

Defendant presented evidence at trial, although he did not testify. Defendant's wife Sharlena testified that she never worked at night, that defendant took her to work every day before going to work himself, and that as a result, defendant was never alone with Lucy in their home. Sharlena testified that the walls in their home were very thin and that she was a very light sleeper, such that defendant and Lucy could not have had sex in their home without her being aware of it. Sharlena also testified that the couch, on which Lucy testified she and defendant first had intercourse, had been removed from Caleb's bedroom by December 1999. Defendant presented four other witnesses who each testified that Lucy told them she had never had sex with defendant, as well as Lucy's friend Taylor, who testified that defendant did not touch her on 5 January 2001, the night she slept at defendant's house.

E. Result at Trial

After deliberations, the jury returned verdicts of guilty on all charges. The trial court then found as an aggravating factor that defendant took advantage of a position of trust or confidence to commit these offenses and sentenced defendant to consecutive sentences from the aggravated range on each offense, for a total of a minimum of 3360 and a maximum of 4131 months imprisonment, or 280 to just over 344 years. From the judgments entered upon these convictions, defendant now appeals.

II.

[1] By his first assignment of error, defendant contends that the judgments entered on each of defendant's six first-degree sexual offense convictions must be vacated due to a fatal variance between the offense alleged in each indictment and the evidence presented at trial, along with the jury instructions. The State concedes that under controlling precedent these judgments must be vacated.

The crime of first-degree sexual offense is set forth, in pertinent part, in N.C. Gen. Stat. § 14-27.4 as follows:

---

2. Lucy was allowed to read a statement she wrote with a detective on 29 January 2001 into the record. Although an objection was made and an unrecorded bench conference occurred, the trial court allowed the entire statement into the record. It appears it was admitted for substantive purposes; no limiting instruction was given. The statement, while consistent with her trial testimony, was remarkably more accurate as to the number of incidents and alleged timing of each incident.

(a) A person is guilty of a sexual offense in the first degree if the person engages in a sexual act:

(1) With a victim who is a child under the age of 13 years and the defendant is at least 12 years old and is at least four years older than the victim; or

(2) With another person by force and against the will of the other person . . .

N.C. Gen. Stat. § 14-27.4(a) (2003). Defendant was indicted on six counts of first-degree sexual offense, with each indictment being identical, save the case number, and all bearing the dates of "May 1, 1999 thru December 6, 2000."

The jurors for the State upon their oath present that on or about the date of the offense shown and in the county named above the defendant named above unlawfully, willfully and feloniously did engage in a sex offense with [Lucy], *by force and against the victim's will.* This act was in violation of [N.C. Gen. Stat. § 14-27.4(a)].

Each of the six indictments for first-degree sexual offense utilized the short-form indictment language authorized by N.C. Gen. Stat. § 15-144.2(a) to charge defendant with first degree sexual offense, on the theory that the alleged sexual offenses were committed by force and against the victim's will. None of the six indictments for first degree sexual offense utilized the short-form indictment language authorized by N.C. Gen. Stat. § 15-144.2(b) to charge defendant with first degree sexual offense pursuant to N.C. Gen. Stat. § 14-27.4(a)(1), on the theory that the alleged sexual offenses were committed against a victim under the age of thirteen years old.

Further, our review of the record indicates that the trial court instructed the jury regarding the first degree sexual offense charges on the theory that Lucy was under the age of thirteen at the time of the alleged offenses, not on the theory that the alleged offenses were forcible. Moreover, the State did not present any evidence that the alleged offenses were forcible.

" 'It has long been the law of this State that a defendant must be convicted, if convicted at all, of the particular offense charged in the warrant or bill of indictment.' " *State v. Miller,* 137 N.C. App. 450, 458, 528 S.E.2d 626, 631 (2000) (holding that jury instructions allowing a conviction pursuant to N.C. Gen. Stat. § 14-27.7A would be different

than the crime charged in the indictment, which was an offense against N.C. Gen. Stat. § 14-27.4(a)(2)) (quoting *State v. Williams*, 318 N.C. 624, 628, 350 S.E.2d 353, 356 (1986) (dealing with a variance in the indictment and instructions on first-degree rape the Court noted that "[t]he failure of the trial court to submit the case to the jury pursuant to the crime charged in the indictment amounted to a dismissal of that charge and all lesser included offenses."). Accordingly, we vacate the judgments entered upon each of defendant's six first-degree sexual offense convictions: 01 CRS 09511 through 01 CRS 09515 and 01 CRS 51630.

### III.

**[2]** By other assignments of error, defendant argues that the five indictments charging him with first-degree rape and the three indictments charging him with indecent liberties did not specify the particular underlying act supporting the charge; subjected him to double jeopardy; span too broad a time period; and deprive him of a unanimous jury verdict. We find defendant's unanimity argument to be dispositive, and therefore do not reach his other assignments of error.[3]

Our state Constitution and statutes vest defendants with a right to only be convicted of crimes by a unanimous jury. *See* N.C. Const. art. I, § 24 ("No person shall be convicted of any crime but by the unanimous verdict of a jury in open court."); N.C. Gen. Stat. § 15A-1237(b) (2003) ("The verdict must be unanimous, and must be returned by the jury in open court."). "To convict a defendant, the jurors must unanimously agree that the State has proven beyond a reasonable doubt each and every essential element of the crime charged." *State v. Jordan*, 305 N.C. 274, 279, 287 S.E.2d 827, 831 (1982) (citing *In re Winship*, 397 U.S. 358, 25 L. Ed. 2d 368 (1970)). Stated differently, the jury must unanimously agree to each element that supports the crime charged. *Id.*; *State v. Baldwin*, 330 N.C. 446, 454, 412 S.E.2d 31, 36 (1992) (quoting *State v. Denning*, 316 N.C. 523, 524, 342 S.E.2d 855, 856 (1986)).

---

3. Defendant did not argue the issue of unanimity to the trial court, nor did he object to the verdict sheets or jury instructions. However, our Court has held that a defendant cannot waive his right to raise a jury unanimity issue on appeal. *See State v. Lawrence*, 165 N.C. App. 548, 556, 599 S.E.2d 87, 94, *temp. stay granted*, 359 N.C. 73, 603 S.E.2d 885 (2004), *disc. review allowed*, 359 N.C. 413, —— S.E.2d —— (No. 457PA04, filed 6 April 2005); *State v. Wiggins*, 161 N.C. App. 583, 592, 589 S.E.2d 402, 409 (2003), *disc. review denied*, 358 N.C. 241, 594 S.E.2d 34 (2004); *State v. Holden*, 160 N.C. App. 503, 506-07, 586 S.E.2d 513, 516 (2003), *aff'd without precedential value*, 359 N.C. 60, 602 S.E.2d 360 (2004).

When reviewing the indictments, evidence presented, and jury instructions, a court must be satisfied that a jury was unanimous in its verdict as to each element of the crime; otherwise the risk of a nonunanimous verdict arises and the judgment on the verdict may have to be reversed to protect the defendant's rights. *See State v. Foust*, 311 N.C. 351, 317 S.E.2d 385 (1984), *overruled by State v. Diaz*, 317 N.C. 545, 555, 346 S.E.2d 488, 495 (1986), *overruling abrogated by State v. Hartness*, 326 N.C. 561, 565-66, 391 S.E.2d 177, 180 (1990); *State v. Lawrence*, 165 N.C. App. 548, 599 S.E.2d 87, *temp. stay granted*, 359 N.C. 73, 603 S.E.2d 885 (2004), *disc. review allowed*, 359 N.C. 413, —— S.E.2d —— (No. 457PA04, filed 6 April 2005); *State v. Wiggins*, 161 N.C. App. 583, 589 S.E.2d 402 (2003), *disc. review denied*, 358 N.C. 241, 594 S.E.2d 34 (2004); *State v. Holden*, 160 N.C. App. 503, 586 S.E.2d 513 (2003), *aff'd without precedential value*, 359 N.C. 60, 602 S.E.2d 360 (2004); *State v. Petty*, 132 N.C. App. 453, 512 S.E.2d 428, *disc. review denied*, 350 N.C. 598, 537 S.E.2d 490 (1999).

Issues regarding a unanimous verdict have been previously raised in many sexual crimes cases. The vast majority of these cases questioned the constitutionality of using disjunctive jury instructions,[4] instructions which conceivably allow the jury to convict a person of a single first-degree sexual offense or a single indecent liberty with a minor without being unanimous as to which prohibited act satisfied the sexual act element, *see* N.C. Gen. Stat. §§ 14-27.4(a) and 14-27.1(4), or the immoral, improper, or indecent act element, *see Hartness*, 326 N.C. at 567, 391 S.E.2d at 180-81, of the respective crimes. *See, e.g., State v. Carrigan*, 161 N.C. App. 256, 589 S.E.2d 134 (2003); *State v. Yearwoood*, 147 N.C. App. 662, 556 S.E.2d 672 (2001); *State v. Haywood*, 144 N.C. App. 223, 550 S.E.2d 38 (2001); *State v. Youngs*, 141 N.C. App. 220, 540 S.E.2d 794 (2000); *State v. Green*, 124 N.C. App. 269, 477 S.E.2d 182 (1996); *State v. Hughes*, 114 N.C. App. 742, 443 S.E.2d 76 (1994); *State v. Speller*, 102 N.C. App. 697, 404 S.E.2d 15 (1991). Still others have dealt with the question of whether the evidence might support more separate offenses than the number of verdict sheets submitted to the jury, thus creating a risk of lack of unanimity. *See, e.g., Lawrence*, 165 N.C. App. at 558-60, 599 S.E.2d at

---

4. A full exploration of our appellate courts' holdings on why the use of a disjunctive jury instruction in sexual offense cases is constitutional is not necessary to this decision. This discussion is sufficiently conveyed in *State v. Lyons*, 330 N.C. 298, 301-09, 412 S.E.2d 308, 311-16 (1991); *State v. Hartness*, 326 N.C. 561, 563-67, 391 S.E.2d 177, 178-81 (1990); *State v. McCarty*, 326 N.C. 782, 784, 392 S.E.2d 359, 360 (1990); and *Lawrence*, 165 N.C. App. at 557-58, 599 S.E.2d at 94-95.

95-96; *Wiggins*, 161 N.C. App. at 592-93, 589 S.E.2d at 408-09; *Holden*, 160 N.C. App. at 506-08, 586 S.E.2d at 516-17.

Here, the question presented is whether a risk of a nonunanimous verdict arises in a multiple count offense case where no instruction is given to the jury that they must agree on each incident represented by each verdict sheet *and* the State presents evidence of a greater number of incidents than there are counts. After reviewing the indictments, evidence, instructions, and verdict sheets, we hold that it does. *See Lawrence*, 165 N.C. App. at 556, 599 S.E.2d at 94; *Holden*, 160 N.C. App. at 506-08, 586 S.E.2d at 516-17; *see also Wiggins*, 161 N.C. App. at 592-93, 589 S.E.2d at 408-09.

From our Supreme Court opinions in *Hartness* and *McCarty*, to this Court's opinions in *Petty, Holden, Wiggins,* and *Lawrence,* no Court has determined that permitting alternative sexual *acts* to serve as the basis for a single criminal offense—the permissible disjunctive instruction—also obviates the requirement that the jury unanimously find distinct and separate sexual *incidents* supporting however many counts of the same offense are presented to them.

> We note that our Supreme Court's determination that first-degree sexual offense is a single wrong for unanimity purposes requires us to conclude that charging a defendant with a separate count of first-degree sexual offense for each alternative sexual act performed in a single transaction would result in a multiplicious indictment. If the defendant engages in alternative sexual acts in separate transactions, however, each separate transaction may properly form the basis for charging the defendant with a separate count of first-degree sexual offense.

*Petty,* 132 N.C. App. at 463, 512 S.E.2d at 435. Thus, this Court, for issues of unanimity, recognizes that multiple counts of the same offense cannot arise from one criminal transaction, only from "separate transactions," or incidents. This presents two avenues of concern for our question of whether the jury was unanimous: one, being able to distinguish separate incidents from that of mere alternative acts, *see Lawrence,* 165 N.C. App. at 556-62, 599 S.E.2d 94-97, and two, a determination of whether the number of incidents or transactions of a given offense presented by the evidence matches the number of counts charged. *See Wiggins,* 161 N.C. App. at 592-93, 589 S.E.2d at 408-09.

By way of example, consider a defendant that is charged with four counts of indecent liberties with a minor. The State presents

evidence of several separate occasions of indecent liberties, but on *one occasion* the defendant fondled the child and also took pornographic pictures of her. *See State v. Kistle*, 59 N.C. App. 724, 727, 297 S.E.2d 626, 628 (1982) (holding that taking pictures of a child in a sexually provocative pose is the evil the statute sought to protect against). Without some guidance from the trial court in its instructions, we are not convinced that the jury will not decide defendant is guilty of two "counts" of indecent liberties, sexual fondling and pornographic pictures, when only one offense was committed with two alternative acts forming the element of an immoral act. Likewise, if the number of clearly separate incidents of indecent liberties presented by the State is six, but the jury is given four identical verdict sheets with no specification of which sheet relates to which incident, then a unanimity issue arises. Neither of these concerns are presented in a case that involves only one count of first-degree sexual offense or indecent liberties.

Notably then, the unanimity of a verdict is jeopardized in multiple count trials for first-degree sexual offense, indecent liberties, and first-degree rape if more incidents of the offenses are presented than the number charged, and the jury receives no guidance from the trial court or indication from the State as to which offenses are to be considered for which verdict sheets. *See Lawrence*, 165 N.C. App. at 556-62, 599 S.E.2d at 94-97; *Wiggins*, 161 N.C. App. at 592-93, 589 S.E.2d at 408-09 (where evidence presents an equal number of incidents as the number of counts then no risk of a nonunanimous verdict is created).

A review of our case law demonstrates potentially how easily a jury unanimity issue can be avoided in multiple count sexual crime cases. After noting that the defendant is charged with multiple counts, simply instructing the jury that for each count of a specific offense they must unanimously find that the State has proven a separate and distinct transaction or occurrence would remove any risk of a nonunanimous verdict. This Court's discussion in *Lawrence*, 165 N.C. App. at 559-60, 599 S.E.2d at 95-96, also indicates several ways in which a defendant's right to a unanimous jury verdict can be secured. *Id.* at 559, 599 S.E.2d at 96 ("[W]hen there is evidence of a greater number of separate criminal offenses than the number of counts submitted to the jury, **either** the State must elect one offense per charge, **or** the trial court must instruct the jury that they are required to agree unanimously on the offense committed.") (emphasis in original).

In *Petty*, the defendant was found guilty of two counts of indecent liberties, one count of attempted first-degree sexual offense, and one count of first-degree sexual offense. However, no unanimity issue was presented by the multiple counts because the State specified the separate and distinct time frame associated with each offense. *See Petty*, 132 N.C. App. at 458, 512 S.E.2d at 432.

Also facing multiple counts, and absent an instruction on being unanimous as to which incidents supported the verdicts, this Court in *Wiggins* was able to match the number of incidents of sexual offense and rape found in the evidence with the same number of counts of sexual offense and rape presented to the jury. The number of incidents presented coincided with the number of counts, and when that occurs the risk that the jury was not unanimous does not arise. *Wiggins*, 161 N.C. App. at 592-93, 589 S.E.2d at 408-09.

Accordingly, with these methods of prevention or correction in mind, we undertake a review of the record in the case *sub judice* to determine whether a risk of a nonunanimous jury verdict arose.

## IV.

### A.  Review of jury instructions, indictments, and verdict forms

Foremost, it is evident from the record and transcripts that no method was employed by either the trial court or State to specify which incidents of rape or indecent liberties were the basis of the indictments and verdicts. The indictments were short-form indictments, all bearing the same 18 month time frame, all lacking any language linking them to any one incident. Likewise, the verdict forms were all identical, all without any indication as to which offense, other than the case number, the verdict form related.

Finally, the jury instructions do not reveal any guidance offered by the trial court regarding the jury's need to unanimously agree on which three incidents of indecent liberties and which five incidents of rape served the basis of their eight verdicts. In its instructions the trial court only noted that defendant "has been accused of three counts of taking an indecent liberty with a child" and "has also been charged with five counts of first degree rape" before explaining the elements of the respective crimes. Then, in explaining the unanimity requirement, the court simply stated: "I instruct you that a verdict is not a verdict until all twelve jurors agree unanimously as to what your decision shall be. You may not render a verdict by a majority vote." There was thus no instruction 1) on the need for unanimity on each

specific sexual incident, 2) not to return more than one verdict based on generic testimony[5] of numerous other incidents, and 3) on the need to not consider various sex acts occurring in one incident as separate counts of the same criminal offense, but only as an alternate means of establishing the sex act necessary for one count. *See Lawrence*, 165 N.C. App. at 559-60, 599 S.E.2d at 95-96.

Since there was no instruction by the trial court or election by the State from which we can determine that the jury necessarily unanimously agreed on separate transactions for this multiple count case, we must review the evidence and determine if it aligns with the number of counts. *See Wiggins*, 161 N.C. App. at 593, 589 S.E.2d at 409.

B. Review of evidence for incidents of indecent liberties

Defendant was charged with three counts of taking indecent liberties with a minor.

A person is guilty of taking indecent liberties with children if . . . he either:

(1) Willfully takes or attempts to take any immoral, improper, or indecent liberties with any child . . . for the purpose of arousing or gratifying sexual desire; or

(2) Willfully commits or attempts to commit any lewd or lascivious act upon or with the body or any part or member of the body of any child . . .

N.C. Gen. Stat. § 14-202.1(a) (2003). While some action on the part of the defendant is necessary, what acts are immoral, improper, or indecent is not statutorily defined.

---

5. Testifying as to precise incidents of rape or sexual offense has always been difficult for children who are repeatedly violated over an extended period of time. *See State v. Stewart*, 353 N.C. 516, 518, 546 S.E.2d 568, 569 (2001). Accordingly, testimony of multiple incidents of rape, sexual offense, or indecent liberties with no real detail to distinguish precise incidents has been termed "generic evidence" or "generic testimony." *See Lawrence*, 165 N.C. App. at 557, 599 S.E.2d at 94; *Wiggins*, 161 N.C. App. at 592-94, 589 S.E.2d at 408-09.

However, there is no apparent statutory or common law authority that would permit the return of more than one indictment based on the same generic testimony. That is, there are no cases upholding two or more convictions, all based on generic testimony that, *e.g.*, "he sexually assaulted me at least once a week for several months."

*Lawrence*, 165 N.C. App. at 557, 599 S.E.2d at 94. Nonetheless, generic evidence is admissible and can support conviction on a single count of rape or sexual offense. *Wiggins*, 161 N.C. App. at 593, 589 S.E.2d at 409.

> [T]he crime of indecent liberties is a single offense which may be proved by evidence of the commission of any one of a number of acts. The evil the legislature sought to prevent in this context was the defendant's performance of any immoral, improper, or indecent act in the presence of a child "for the purpose of arousing or gratifying sexual desire." Defendant's purpose for committing such act is the gravamen of this offense; the particular act performed is immaterial.

*Hartness*, 326 N.C. at 567, 391 S.E.2d at 180. Further, indecent liberties do not merge with or are not lesser included offenses of sexual offense or rape; evidence of one incident of rape or sexual offense may support a conviction for indecent liberties as well. *State v. Swann*, 322 N.C. 666, 370 S.E.2d 533 (1988) (sexual offense); *State v. Manley*, 95 N.C. App. 213, 381 S.E.2d 900 (sexual offense), *disc. review denied*, 325 N.C. 712, 388 S.E.2d 467 (1989); *State v. Hewett*, 93 N.C. App. 1, 376 S.E.2d 467 (1989) (rape); *State v. Allen*, 92 N.C. App. 168, 374 S.E.2d 119 (1988) (rape), *cert. denied*, 324 N.C. 544, 380 S.E.2d 772 (1989).

Defendant was charged with three counts of indecent liberties, yet the State ended up presenting evidence of more than three incidents of indecent liberties. Indeed, there was: 1) the incident where defendant exposed himself, 2) the incident on the couch in the living room where defendant pushed aside Lucy's nightgown and tried to have sex with her, and 3) the incident in which defendant simulated having sex with Lucy while she was wearing a bathing suit. Prior to deliberations, the State made no election that these three incidents were the basis of defendant's three charges, but on appeal argue as much.

We do not disagree that these incidents do support the charges, but cannot also overlook the fact that there was evidence of numerous incidents of rape as well as multiple incidents of sexual offense in the first degree. There was also evidence of at least one additional isolated incident of an immoral act standing by itself: Debbie's testimony that defendant stuck his hand up Lucy's shirt while they were watching a pornographic film. If several jurors in voting guilty to three counts of indecent liberties were relying on one, two, or even more incidents where rape or sexual offense occurred, while others focused on the three incidents the State suggests or some combination altogether different, all of the incidents would have supported a finding of guilty but potentially none of the jurors were unanimous in

which incidents supported which verdicts. *See Lawrence,* 165 N.C. App. at 561-63, 599 S.E.2d at 97-98.

Further, there is no way to tell that the jury did not incorrectly decide that alternative acts during one sexual incident supported multiple counts of the crime charged. The incident of simulated sex on the bed where both girls were wearing their bathing suits contained potentially three immoral acts: defendant's masturbating in front of Lucy, his kissing her under the circumstances, and the simulated sex itself.

With no instruction from the trial court or election by the State, we are not convinced that the risk of a nonunanimous verdict was avoided in this case. According to our appellate decisions, during the eighteen month span that the State presented evidence on, the jury could have found defendant guilty of more than fifteen counts of indecent liberties with a minor. Since he was charged with only three, we cannot tell from the record or evidence presented which three the jury found him guilty of and therefore must reverse judgments 01 CRS 09508, 01 CRS 09509, and 01 CRS 09510.

## C. Review of evidence for first-degree rape

"A person is guilty of rape in the first degree if the person engages in vaginal intercourse . . . [w]ith a victim who is a child under the age of 13 years . . . ." N.C. Gen. Stat. § 14-27.2(a)(1) (2003). It has long been determined that rape is not a continuous offense, and therefore each incident of intercourse is a separate offense. *State v. Small,* 31 N.C. App. 556, 559, 230 S.E.2d 425, 427 (1976), *disc. review denied,* 291 N.C. 715, 232 S.E.2d 207 (1977); *State v. Owen,* 133 N.C. App. 543, 551-52, 516 S.E.2d 159, 165 (1999). To constitute intercourse, there only needs to be "[e]vidence of the slightest penetration of the female sex organ by the male sex organ . . . ." *Owen,* 133 N.C. at 551-52, 516 S.E.2d at 165 (quoting *State v. Midyette,* 87 N.C. App. 199, 201, 360 S.E.2d 507, 508 (1987)).

Defendant was charged with five counts of first-degree rape on the basis of the victim's age. On appeal, the State argues that there were five incidents of rape: 1) one of partial penetration on the couch in the living room, and 2) another incident of penetration following that night on the couch in Caleb's room; 3) an additional specific incident of sex on the couch in the living room; 4) sex after the incident with the screwdriver; and 5) one incident of sex on the floor in Caleb's room, the incident which Sharlena almost witnessed.

Again, we do not disagree with these incidents supporting five counts of rape; but there is still ambiguity in which incidents support which verdicts.

First, the State overlooks the fact that Lucy testified she and defendant had intercourse thirty-two times. Without more, this testimony does not support thirty-two counts but indeed does support one count of rape, under the theory of generic testimony. *See supra,* n.5. Further, the jury was not told that they could find only one count from this testimony. Some of the jurors may have relied on this testimony in determining the number of incidents of rape, some may not have. Second, despite testimony that the dates in Lucy's written statement were inaccurate, her statement placed the first incident of sex at an earlier date, summer of 1999, rather than the first descriptive incident in December 1999. As such, the jury may have found Lucy's statement supported evidence of a separate count of rape not included in the State's calculations. Third, at trial, while the State offered no indication as to which incidents of rape supported the five counts, it did reference the occasion defendant had intercourse with Lucy on the couch in Caleb's room as "the first time [the two] actually had sex." If the State represented to the jury that that incident was first, on appeal it is now argued as the *second* incident the two had intercourse.

By any calculation the risk of a nonunanimous verdict arises. Adding the generic testimony of intercourse occurring thirty-two times and the potential reliance on Lucy's statement into the State's contention on appeal provides the jury with the ability to find defendant guilty of seven counts of rape. Following the State's argument at trial may actually give rise to five counts of rape, but only if the generic testimony is included as one and the characterized "partial penetration" on the couch in the living room and statement that sex occurred in summer of 1999 are not. It remains evident, however, that absent any additional instruction, we cannot be assured there was no ambiguity or nonunanimity in the verdict. *See Lawrence,* 165 N.C. App. at 563, 599 S.E.2d at 98; *Wiggins,* 161 N.C. App. at 592-93, 589 S.E.2d at 408-09. As such, we reverse defendant's remaining convictions of rape: 01 CRS 09516, 01 CRS 09517, 01 CRS 09518, 01 CRS 09520, and 01 CRS 51631.

V.

Defendant was charged with six counts of first-degree sexual offense, five counts of first-degree rape, and three counts of taking

indecent liberties with a minor. Due to a fatal variance in defendant's indictments for first-degree sexual offense and jury instructions, we vacate defendant's judgments entered upon those charges. We also reviewed the indictments, instructions, evidence, and verdict sheets in defendant's remaining charges for rape and indecent liberties. Since no jury instruction, indictment, or verdict sheet distinguished which incidents of the respective crimes the jury was finding defendant guilty of, *and* there was evidence of more incidents presented than the respective charges, the risk of a nonunanimous jury verdict arose. Therefore we must reverse defendant's judgments for indecent liberties and statutory rape and remand for a new trial on those charges. *See Diaz,* 317 N.C. at 555, 346 S.E.2d at 495 (defendants deprived of their constitutional right to be convicted by a unanimous jury are entitled to a new trial).

Vacated in part; Reversed in part; remanded.

Judge GEER concurs.

Judge Bryant concurs in part and dissents in part.

BRYANT, Judge, concurring in part and dissenting in part.

I concur in the portion of the majority opinion vacating the judgment entered in the convictions for First Degree Sexual Offense as I agree the variance between the indictments and the evidence is fatal.

However, I strongly disagree and therefore dissent from the majority opinion remanding for a new trial the five counts of first degree rape and three counts of taking indecent liberties with a minor. The majority relies almost solely on *State v. Gary Lee Lawrence, Jr.,* 165 N.C. App. 548, 599 S.E.2d 87 (2004), *stay granted,* 359 N.C. 73, 603 S.E.2d 885 (2004) and *disc. review granted,* 359 N.C. 413, (Apr. 6, 2005) (No. 457PA04) and *State v. Holden,* 160 N.C. App. 503, 506-07, 586 S.E.2d 513, 516 (2003), *aff'd without precedential value,* 359 N.C. 60, 602 S.E.2d 360 (2004), a major case upon which *Lawrence* relies. Considering the current posture of those two cases, and for the reasons which follow, I respectfully dissent.

### Taking Indecent Liberties with a Minor

The North Carolina Constitution and North Carolina statutory law require a unanimous jury verdict in a criminal jury trial. See N.C.

Const. art.1, § 24; N.C.G.S. § 15A-1237(b) (1997). Two lines of cases, *Diaz* and *Hartness*, have developed in our jurisprudence regarding whether certain disjunctive instructions result in an ambiguous or uncertain verdict such that it might violate a defendant's right to a unanimous verdict. *State v. Diaz*, 317 N.C. 545, 346 S.E.2d 488 (1986); *State v. Hartness*, 326 N.C. 561, 391 S.E.2d 177 (1990).

There is a critical difference between the line of cases represented by *Diaz* and *Hartness*.

The [*Diaz*] line establishes that a disjunctive instruction, which allows the jury to find a defendant guilty if he commits either of two underlying acts, *either of which is in itself a separate offense*, is fatally ambiguous because it is impossible to determine whether the jury unanimously found that the defendant committed one particular offense. The [*Hartness*] line establishes that if the trial court merely instructs the jury disjunctively as to various alternative acts *which will satisfy an element of the offense*, the requirement of unanimity is satisfied.

*State v. Lyons*, 330 N.C. 298, 302-03, 412 S.E.2d 308, 312 (1991) (emphasis supplied).

In *Hartness* the Supreme Court made clear that the reasoning of *Diaz*, a drug trafficking case, did not apply to cases involving indecent liberties. *Hartness*, 326 N.C. at 564, 391 S.E.2d at 179. Sex offense and indecent liberties cases involve situations in which a single wrong can be established using various alternative acts such that a danger of lack of unanimity does not arise. Indeed, in the instant case the majority opinion acknowledges the long-standing line of cases in which jurors were "conceivably allow[ed][ ] to convict a person of a single first degree sexual offense or a single indecent liberty with a minor without being unanimous as to which prohibited act satisfied the sexual act element . . . or the immoral, improper or indecent act element."

Furthermore, our Supreme Court has expressly determined that disjunctive jury instructions do not risk nonunanimous verdicts in first-degree sexual offense [and taking indecent liberties] cases. *State v. McCarty*, 326 N.C. 782, 784, 392 S.E.2d 359, 360 (1990) (upholding jury instructions that defendant could be found guilty of first degree sexual offense "if [the jury] found [the] defendant [had] engaged in either fellatio or vaginal penetration")

*State v. Petty*, 132 N.C. App. 453, 462, 512 S.E.2d 428, 434 (1999). See also *State v. Brothers*, 151 N.C. App. 71, 564 S.E.2d 603 (2002); *State v. Yearwood*, 147 N.C. App. 662, 556 S.E.2d 672 (2001).

Many of the above-referenced cases discuss the "gravamen" or "gist" of the statutes involved. The gravamen of the indecent liberties statute (N.C.G.S. § 14-202.1) is to criminalize the performance of a sexual act with a child.

> The evil the legislature sought to prevent in this context was the defendant's performance of any immoral, improper, or indecent act in the presence of a child 'for the purpose of arousing or gratifying sexual desire.' Defendant's purpose for committing such act is the gravamen of this offense; the particular act performed is immaterial.

*Hartness*, 326 N.C. at 567, 391 S.E.2d at 180. In other words, the particular act or conduct is not the gravamen of the offense, but only one of several alternative ways to establish a single wrong. The indecent liberties statute proscribes "any immoral, improper or indecent liberties." Therefore, "even if some jurors found that the defendant engaged in one kind of sexual misconduct, while others found that he engaged in another, 'the jury as a whole would unanimously find that there occurred sexual conduct within the ambit of any immoral, improper, or indecent liberties.' " *State v. Lyons* at 305-06, 412 S.E.2d at 313.

In the instant case defendant was charged and convicted by a jury of *inter alia*, three counts of Taking Indecent Liberties with a Minor. At trial the victim testified to three specific acts which constituted Taking Indecent Liberties with a Minor: (1) "the game" where defendant exposed his private parts and victim lifted her shirt; (2) where defendant touched his private part to the victim's private part; and (3) where defendant masturbated in front of victim and her sister. The three acts testified to by the victim were the three acts the jury relied upon in reaching their guilty verdicts as to Taking Indecent Liberties. While it is not readily apparent from the record, the majority opinion mentions that some jurors *may* have relied upon a fourth act— defendant's hand under the victim's shirt—as a basis for their verdict. Regardless, such reliance does not present a unanimity problem. As our case law clearly holds, where the jury found sexual conduct which constitutes an immoral, improper or indecent act, such is sufficient for a unanimous verdict of the whole jury. *Lyons* at 305-06, 412 S.E.2d at 313. Therefore, with respect to the convictions of Taking

Indecent Liberties, as in *Hartness*, I would find "[t]he risk of a nonunanimous verdict does not arise in cases such as the one at bar because the statute proscribing indecent liberties does not list, as elements of the offense, discrete criminal activities in the disjunctive. . . ." *Hartness*, 326 N.C. at 567, 391 S.E.2d at 179.

The majority also states that because there were multiple incidences of rape, the jury could have used such incidences to support a conviction of indecent liberties, and then further states that because there was "no instruction from the trial court or election by the State [they, (the majority) were] not convinced that the risk of a nonunanimous verdict was avoided in this case." This type of analysis the majority puts forth *sua sponte* on appeal is troubling because it extends the concept of unanimity far beyond what the law requires and beyond what is reasonable for child sexual abuse cases in North Carolina. No election by the state nor further instruction by the trial court is required under our law. Therefore, failure to further instruct the jury or to have the state elect which incidences to use to support the charges of Taking Indecent Liberties is not error, and cannot serve as the basis for overturning a unanimous jury verdict.

### First Degree Statutory Rape

The disjunctive analysis used in first degree sexual offense and taking indecent liberties cases does not apply to rape cases. Here, the majority says there is ambiguity as to which incidents support which verdicts of rape. At trial the victim testified, describing five very specific instances of rape: (1) partial penetration on the couch; (2) penetration on couch in Casper's room; (3) penetration on couch in living room; (4) penetration following incident with screwdriver; (5) penetration on floor in Casper's room. After hearing all the testimony, five separate verdict sheets as to the rape offenses were presented to the jury[6] and the jury returned verdicts of guilty on five counts of rape. Based on *State v. Wiggins*, this, without more, is sufficient to defeat a unanimity argument. See *State v. Wiggins*, 161 N.C. App. 583, 589 S.E.2d 402 (2003) (holding where the number of qualifying incidents testified to by the victim at trial was the same as the number of qualifying incidents on the verdict sheets submitted, there was no danger of lack of unanimity).

---

6. The jury evaluated a total of 14 separate verdict sheets: Indecent Liberties (3); First Degree Sexual Offense (6); and First Degree Rape (5). Each of the First Degree Rape verdict sheets contained the following language: "We, the jury, return as our **unanimous** verdict that the defendant, Markeith Rodgers Lawrence, is: . . . Guilty of first degree statutory rape . . ." All five verdict sheets are marked Guilty.

STATE v. LAWRENCE

[170 N.C. App. 200 (2005)]

Moreover, defendant in the instant case raises the unanimity argument out of thin air. There was no objection at trial because nothing objectionable occurred. The evidence was presented. The jury was instructed on all issues, including unanimity[7]. There were no questions or other indications from the jury to suggest any confusion as to their duty in the trial. The jury deliberated and reached a decision on all counts submitted to them in less than 1 and 1/2 hours. Upon return of the verdicts, all jurors indicated assent to their verdict. In fact, all jurors were polled individually, the charges read to them using the applicable CRS number, and each juror affirmed their unanimous verdict in open court, as to each charge submitted.

Clearly, the verdicts in this case do not raise a danger of lack of unanimity. Is there any rational basis upon which the jury could have found defendant committed one act of rape but not another? The defendant's defense was simply "I did not do it." In the instant case, where nothing occurred during the course of trial nor during jury deliberations to raise a concern, where is the showing of error in the court's instructions or a lack of unanimity?

The courts properly presume that jurors pay close attention to the instructions of the trial judge in criminal cases and that they "undertake to understand, comprehend, and follow the instructions as given." *State v. Nicholson*, 355 N.C. 1, 60, 558 S.E.2d 109, 148, *cert. denied*, 537 U.S. 845, 154 L. Ed. 2d 71 (2002) (citation omitted). As our Supreme Court has stated, "these instructions, when read as a whole, required a verdict of not guilty if all twelve jurors were not satisfied beyond a reasonable doubt that the defendant engaged in an unlawful sexual act . . . [and there is] nothing in the record indicat[ing] any confusion, misunderstanding, or disagreement among the members of the jury which would indicate a lack of unanimity." *Hartness*, 326 N.C. at 565, 391 S.E.2d at 179.

As a practical matter, albeit subject to concerns of invading the province of the jury, I agree with the majority that in cases involving multiple acts of child sexual assault the better practice *might* be for the state to draft indictments and use verdict sheets which specify the act that is the basis for the charge. However, and most importantly, under our law, failure to do so is not reversible error.

---

7. "I instruct you that a verdict is not a verdict until all twelve jurors agree unanimously as to what your decision shall be . . . [W]hen you have reached a unanimous verdict . . . please have your foreperson write your verdict on the verdict forms . . ."

[Our] statutes do not specify what constitutes a proper verdict sheet, . . . [n]or have our Courts required the verdict forms to match the specificity expected of the indictment." *State v. Floyd*, 148 N.C. App. 290, 295, 558 S.E.2d 237, 240-241 (2002). A verdict is deemed sufficient if it "can be properly understood by reference to the indictment, evidence and jury instructions."

*State v. Connard*, 81 N.C. App. 327, 336, 344 S.E.2d 568, 574 (1986), *aff'd*, 319 N.C. 392, 354 S.E.2d 238 (1987) (per curiam).

In the instant case defendant has failed to show a lack of unanimity in the jury verdicts. There must be more than a "possibility of a non-unanimous verdict" to overturn a unanimous jury verdict. We cannot decide cases based on speculation of what might have been. Perhaps the greatest danger posed by the majority opinion is that it would allow a convicted defendant to speculate on appeal, as to what a jury might have done during the course of deliberations at trial and with no indication the jury struggled with unanimity issues, grant defendant a new trial based on speculation. The burden is on defendant to show prejudicial error in order to have his conviction reversed and a new trial granted. Here, the evidence of record shows the jury was instructed on the law by the trial court, the jury was presented with a total of 14 separate verdicts sheets as to three specific types of sexual crimes, the jury had no questions or concerns during the course of deliberations, and in a fairly short time the jury convicted defendant in unanimous verdicts.

In my opinion, this defendant received a fair trial, free from prejudicial error as to his convictions of Taking Indecent Liberties with a Minor and First Degree Statutory Rape rendered by a unanimous jury in open court.