WILKINSON, Circuit Judge,
concurring in the judgment:
The North Carolina indecent liberties statute is singularly broad and the Shepard-approved documents are singularly unedifying. For these reasons and in these narrow circumstances, I cannot find the three predicate crimes of violence necessary to support an Armed Career Criminal Act (“ACCA”) enhancement. Because I believe too many courts are too deep in the weeds on the matter of the ACCA’s residual clause, I reluctantly feel required to write separately.
I appreciate very much the conscientious attention of my colleagues to this case. The profusion of opinions here, however, illustrates the obvious difficulties that courts are experiencing in applying the residual clause of 18 U.S.C. § 924(e) (2) (B) (ii). Whether this is due to the fondness of Congress for vague formulations or the propensity of judges to weave intricate webs of doctrine, I do not know. Whatever the reason, when an inquiry becomes overly complex, the best course is to repair to simplicity, which in this case is the congressional intent underlying the ACCA.
It cannot have been the intent of Congress to categorically sweep up all sorts of non-violent indecent liberties offenses as predicate ACCA crimes. Neither, however, can it possibly have been the intent of *802 Congress to categorically exclude as predicates those crimes where minors were victimized by violent sexual assaults. For the reasons that follow, I believe the court has no choice but to adopt in this case a modified categorical approach.
I.
As its name implies, the ACCA sought to punish particular types of crimes — serious drug offenses and -violent felonies. Congress could have attached the ACCA enhancement to a larger universe of felonies or indeed to all felonies, but it did not do so. Instead, it addressed violent felonies, and the inclusion of that conduct necessarily means the exclusion of some other. See H.R.Rep. No. 98-1073, at 3 (1985), reprinted in 1984 U.S.C.C.A.N. 3661, 3662 (“Having established this need [to enhance sentences for repeat offenders] generally, the question then remained for the Committee to determine what particular segment of the career criminal population the Federal Government should target.”).[1]
II.
In this case, somewhat unusually, Vann’s alleged ACCA predicates all involved violations of the same indecent liberties statute. That statute, N.C. Gen.Stat. § 14-202.1, is staggeringly broad, making it more difficult to determine whether “[s]erious and substantial risks” of physical injury akin to those presented by the enumerated crimes “are an inherent part” of a typical offense. Sykes v. United States, — U.S. -, 131 S.Ct. 2267, 2276, 180 L.Ed.2d 60 (2011).
Nor does parsing the statute into separate offenses under subsections 14-202.1(a)(1) and 14-202.1(a)(2) help much— both are written in such sweeping terms as to confound a categorical analysis of the risk presented by the “typical” violation. Section (a)(1) criminalizes “immoral, improper, or indecent liberties,” but those terms are so imprecise as to offer virtually no guidance as to what conduct is an inherent part of a § 14-202.1(a)(l) violation. See State v. Lawrence, 170 N.C.App. 200, 612 S.E.2d 678, 687 (2005) (“While some action on the part of the defendant is necessary, what acts are immoral, improper, or indecent is not statutorily defined.”)
Section (a)(2) is not much better. For example, it repeatedly uses the term “any,” reaching “any lewd or lascivious act upon or with the body or any part or member of the body of any child.” N.C. Gen.Stat. § 14-202.1(a)(2) (emphasis added). It is well-accepted that this is a broadening term, but although a “catchall the phrase surely is; ... to say this is not to define what it catches.” Flora v. United States, 362 U.S. 145, 149, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960) (discussing the meaning of “any sum”). Nor do the precise terms of the statute narrow its scope: courts in North Carolina have adopted dictionary definitions of “lewd” — meaning “inciting to sensual desire or imagination”— and “lascivious” — meaning “tending to arouse sexual desire.” See, e.g., State v. Hammett, 182 N.C.App. 316, 642 S.E.2d 454, 458 (2007).
Thus, in addition to the repeated use of the word “any,” the many adjectives in the statute are both fuzzy and expansive, encompassing a spectrum of acts from the immensely serious to the more innocuous. *803 The extraordinary breadth of § 14-202.1 is by design: “the legislature enacted [it] to encompass more types of [wrongful] behavior, giving children broader protection than available under other statutes proscribing sexual acts.” State v. Etheridge, 319 N.C. 34, 352 S.E.2d 673, 682 (1987). The statute has achieved this remarkable scope by making the “[defendant’s purpose for committing such act ... the gravamen of this offense; the particular act performed is immaterial.” State v. Hartness, 326 N.C. 561, 391 S.E.2d 177, 180 (1990). We may not, however, take such a shortcut in our ACCA analysis; we must determine whether an indecent liberties offense “involves conduct” — the particular act performed in committing a generic violation of the statute — that poses a risk comparable to that presented by any of the enumerated ACCA predicates.
It bears note that not only does the breadth of the statute complicate our task of determining what is a typical indecent liberties offense, but it also stands in sharp contrast to the notably specific elements of the crimes ACCA does list. For example, the Supreme Court has held that “burglary” necessarily “contains at least the following elements: an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime.” Taylor v. United States, 495 U.S. 575, 598, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). Similarly, the federal Hobbs Act defines extortion as “the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force.” 18 U.S.C. § 1951(b)(2) (2006). These precise formulations diverge remarkably from the criminalization in § 14-202.1(a)(2) of -virtually any act done with a prurient intent either in or out of the presence of a minor. The indecent liberties offense also differs substantially from other prohibitions on sexual abuse (and more likely candidates for categorical treatment) in the North Carolina General Statutes, such as N.C. Gen. Stat. § 14-27.5A(a),[2] which provides that:
(a) A person is guilty of sexual battery if the person, for the purpose of sexual arousal, sexual gratification, or sexual abuse, engages in sexual contact with another person:
(1) By force and against the will of the other person; or
(2) Who is mentally disabled, mentally incapacitated, or physically helpless, and the person performing the act knows or should reasonably know that the other person is mentally disabled, mentally incapacitated, or physically helpless.
Significantly, this statute incorporates a highly specific definition of “sexual contact” — “(i) touching the sexual organ, anus, breast, groin, or buttocks of any person, (ii) a person touching another person with their own sexual organ, anus, breast, groin, or buttocks, or (iii) a person ejaculating, emitting, or placing semen, urine, or feces upon any part of another person.” N.C. Gen.Stat. § 14-27.1.5.
It is these sort of specific requirements that enable us to say with some certainty of a crime that the standard offense carries a serious risk of physical injury to another or “can end in confrontation leading to violence.” Sykes, 131 S.Ct. at 2269. Thus, the categorical approach will be the one courts most frequently utilize. But in this case, we are left with a broad statute that North Carolina courts have described virtually tautologically. See, e.g., State v. *804 McClees, 108 N.C.App. 648, 424 S.E.2d 687, 690 (1998) (“Indecent liberties are defined as such liberties as the common sense of society would regard as indecent and improper.” (internal quotation marks omitted) (quoting Black’s Law Dictionary (6th ed.1991))); cf. Osborne v. Ohio, 495 U.S. 103, 135-36, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990) (“At common law, the term ‘lewd’ included any gross indecency so notorious as to tend to corrupt community morals, an approach that was subjective and dependent entirely on a speaker’s social, moral, and cultural bias.” (internal quotation marks and citations omitted)).
I simply cannot say that a typical violation of the indecent liberties statute necessarily entails a risk of physical injury when the statute does so little to define the conduct necessary to commit a violation. I have no doubt that many of the crimes punished under § 14-202.1 are repugnant, and many may be emotionally traumatizing for the young victims — North Carolina does well to punish such conduct. But vile conduct is not necessarily violent conduct, and psychological injury alone, though no less real than the physical injury required by the statute, is not an adequate basis for an ACCA predicate. See Johnson v. United States, — U.S. -, 130 S.Ct. 1265, 1270, 176 L.Ed.2d 1 (2010) (“The adjective ‘physical’ ... plainly refers to force exerted by and through concrete bodies — distinguishing physical force from, for example, intellectual force or emotional force.”) It is an emotionally tempting but legally unacceptable use of the ACCA’s residual clause to draw within it any criminal conduct that we as judges understandably deplore and truly do not like.
“Congress chose to frame ACCA in general and qualitative, rather than encyclopedic, terms,” Sykes, 131 S.Ct. at 2277, but the quality ACCA predicates share is an unacceptable risk of physical injury arising in the usual course. Although Sykes clarifies that the risk of physical harm need not necessarily arise from “purposeful, violent, and aggressive” conduct to qualify as an ACCA predicate, id. at 2275 (quoting Begay, 553 U.S. at 145, 128 S.Ct. 1581), it reaffirmed the statutory requirement that the risk posed be physical. In Sykes, there was no need to differentiate types of risk; “an inherent part of the offense” of vehicular flight from law enforcement is a “lack of concern for the safety of property and persons of pedestrians and other drivers.” Id. at 2269. But the breadth of the indecent liberties statute includes forms of risk that, while terrible, fall outside the statute. See State v. Breathette, 690 S.E.2d 1, 5-6 (N.C.Ct.App. 2010) (“Undoubtedly [N.C. Gen.Stat. § 14-202.1’s] breadth is in recognition of the significantly greater risk of psychological damage to an impressionable child from overt sexual acts.” (quoting State v. Banks, 322 N.C. 753, 370 S.E.2d 398, 407 (1988) (alteration in original))).
In sum, I cannot see how an indecent liberties offense under either prong of the North Carolina statute can categorically be deemed an ACCA predicate crime of ■violence. I further conclude, as the Supreme Court has instructed, that when a statute is too broad to categorically serve as an ACCA predicate, the proper approach is not to throw up our hands and abandon the purpose of the statute, but rather to proceed with the modified categorical approach.
III.
To say that North Carolina’s indecent liberties statute is so broad as to preclude categorical classification is thus only a first step. It does not mean that a violation of § 14-202.1 can never be an ACCA predicate under the residual clause. In dealing with statutes such as this one, the Su *805 preme Court has approved the use of the “modified categorical approach,” using charging documents, plea colloquies, jury instructions, and other “conclusive court documents,” to assess whether a defendant was in fact convicted of a crime that in its generic form would be an ACCA predicate. See Shepard v. United States, 544 U.S. 13, 26, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005); Taylor, 495 U.S. at 599-600, 110 S.Ct. 2143. Such analysis is appropriate when “the behavior underlying, say, breaking into a building differs so significantly from the behavior underlying, say, breaking into a vehicle that for ACCA purposes a sentencing court must treat the two as different crimes.” Chambers v. United States, 555 U.S. 122, 129 S.Ct. 687, 690, 172 L.Ed.2d 484 (2009). Of course, whether a statute is susceptible to modified categorical analysis under the ACCA is a federal question, but one whose answer is often informed by analysis not only of the statute itself but of accompanying state decisional law.
Here, the modified categorical approach should apply. Under the North Carolina statute, it is clearly possible for defendants to be convicted for various forms of conduct that would constitute “different crimes,” some of which would generically be ACCA predicates. Some defendants have been charged under § 14-202.1 with conduct amounting to statutory rape, see, e.g., State v. McLean, 158 N.C.App. 314, 580 S.E.2d 431 (N.C.Ct.App.2003), which we have previously held not to serve as an ACCA predicate in United States v. Thornton, 554 F.3d 443 (4th Cir.2009). Other defendants have been convicted of more serious forms of sexual assault, see, e.g., State v. Askew, 183 N.C.App. 156, 643 S.E.2d 678 (N.C.Ct.App.2007), akin to that proscribed by the Vermont statute that the Second Circuit held qualified as an ACCA predicate in United States v. Daye, 571 F.3d 225 (2d Cir.2009) (addressing statute that defined sexual assault as any “contact between the penis and the vulva, the penis and the anus, the mouth and the penis, the mouth and the vulva, or any intrusion, however slight, by any part of a person’s body or any object into the genital or anal opening of another.” Id. at 230 (quoting Vt. Stat. Ann. tit. 13, § 3251(1)).).
Here, however, the Shepard documents — a 1991 indictment and a 1998 information — do no more than parrot back the wide-ranging words of the North Carolina statute itself, and so do not describe “[t]he nature of the behavior that likely underlies [the] statutory phrase.” Chambers, 129 S.Ct. at 690. As a result, the modified categorical approach in this case is no more illuminating than the categorical one, and we are left with the bare words of a statute that is written about as broadly as it possibly could be. Given the pattern of misconduct here, I suspect the defendant committed qualifying violations, but suspicions are insufficient, and the record, like the proverbial cupboard, is too bare.[3]
Thus, even though application of the modified categorical approach is appropriate, it yields no victory for the government here. My dear friend Judge King’s concurring opinion — which I hereinafter refer to as “the concurrence” — goes further, however, and declares that modified categorical analysis is not suitable. The concurrence insists on rejecting the government’s contention that the modified categorical approach is implicated here, ante at 784, and reiterates that “the modified categorical approach cannot apply to *806 Vann’s situation,” ante at 784. .With the greatest respect, I think that the categorical approach of the concurrence would have the unintended effect of visiting serious harms on children.
This categorical approach also strips the North Carolina statute of all effect. While I agree that for purposes of predictability and conserving trial court resources, the categorical approach is to be preferred, a respect for the efforts of the legislative branch may require that we recognize through a modified approach those instances of violent conduct that a statute seeks to reach. A different case might come out differently; a more specific set of Shepard charging documents could reveal “whether the plea had necessarily rested on” the sort of sexual assault that generally presents a serious potential risk of physical injury. Shepard, 544 U.S. at 21, 125 S.Ct. 1254. I cannot understand how the concurrence can properly note the breadth of the statute and fail to recognize that it is that very breadth that makes further inquiry under the strict Shepard standards appropriate.
The concurrence suggests that my differences must be with “the governmental bodies that created the controlling legal principles.” Ante at 787 n. 9. Judge Davis similarly charges that I have “confuse[d] the important law-making tasks committed by our constitutional structure to the legislature of North Carolina ... with the adjudicative tasks committed to federal judges.” Ante at 790 (Op. of Davis, J.). But I have no quarrel with either of these two duly enacted and presumptively valid statutes. My reservations have to do with the fact that ruling all indecent liberties offenses non-violent gives neither the state nor the federal statute any real effect. A state has every expectation that its convictions will be properly treated and respected under federal law, and this is no less true of North Carolina’s efforts here to protect the most vulnerable members of our society. The concurrence repeatedly invokes principles of federalism, but its refusal to recognize any role here for the North Carolina statute is the very antithesis of what dual sovereignty is about. Under the concurrence’s ACCA analysis, even the most savage sexual assault against even the youngest child counts for nothing — nothing—just because it was prosecuted as a violation of § 14-202.1. I do not understand why this is so.
The categorical approach, as described by the concurrence, immunizes from the ACCA’s reach a wide range of violent crimes that, although punished under this broad statute, could undoubtedly serve as ACCA predicates in their generic form. If, for example, a federal district judge was persuaded by a charge or plea colloquy that a young child had been bruised and beaten in the course of sexual aggression, how can that act not generieally implicate ACCA? See, e.g., Model Penal Code § 213.2 (2001) (Deviate Sexual Intercourse by Force or Imposition).[4]
*807 IV.
Congress wanted violent crimes to count as predicates under the ACCA and nonviolent crimes not to count. A modified categorical approach here best honors its intent. Hewing to categorical absolutes will have the most serious effects. Ruling indecent liberties offenses categorically non-violent will allow brutal acts committed against children under a state statute designed to protect them to escape recognition under ACCA, eviscerating all the while the reach of a federal statute that is itself designed to protect citizens from just such depredations. Conversely, ruling indecent liberties violations categorically to be ACCA predicates will impermissibly sweep up who knows what prurient, but non-violent, acts. I fear we are so ensnared by our doctrine (federal or state question, single or dual offense, conjunctive or disjunctive charges, etc.) that we forget both those whom Congress and the state of North Carolina are attempting to protect and the nature of the acts from which law is trying to shield them. There is a way to safeguard defendants from the breadth of this enactment, to require that the evidence as to them meet strict Shepard standards, and still to preserve some place for children as special wards of the law and state. Because the modified categorical approach herein applied best captures each of these three aims, I am happy to concur in the judgment:

. It bears note that the status of Vann's convictions as qualifying ACCA predicates is all that is at issue here. The validity of those convictions is not in question, nor could that validity be drawn into doubt in this federal sentencing proceeding. See Johnson v. United States, 544 U.S. 295, 125 S.Ct. 1571, 161 L.Ed.2d 542 (2005); Daniels v. United States, 532 U.S. 374, 121 S.Ct. 1578, 149 L.Ed.2d 590 (2001); Custis v. United States, 511 U.S. 485, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994).

. This statute provides for punishment as a Class A1 misdemeanor. It is of course up to the North Carolina legislature how it chooses to categorize its offenses — another state could just as easily classify this crime as a felony. Compare N.C. Gen.Stat. § 14-27.5A(a), with Vt. Stat. Ann. tit. 13, § 3252(a).

. Because the per curiam opinion’s holding is ultimately premised on this conclusion, I believe the discussion of Vann’s guilty pleas, ante at 775-77, is unnecessary to the disposition of the case.

. The concurrence considers it dispositive that "North Carolina precedent demonstrates that the essential elements of [§ 14-202.1 and parallel provisions of the Model Penal Code] are materially dissimilar.” Ante at 785. Judge Davis posits that the modified categorical approach is unacceptable here because the North Carolina courts have not required an act of violence as an element of an indecent liberties offense. Ante at 794 (Op. of Davis, J.). Both of these statements misapprehend the whole purpose of the modified categorical approach, which applies in instances, such as this one, where the statutory definition of the crime is broader than the generic definition. See Taylor, 495 U.S. at 600, 110 S.Ct. 2143 ("A few States’ burglary statutes, however, ... define burglary more broadly, e.g., by eliminating the requirement that the entry be unlawful.... We therefore *807 must address the question whether, in the case of a defendant who has been convicted under a nongeneric-burglary statute, the Government may seek enhancement on the ground that he actually committed a generic burglary.”)
It is thus irrelevant to the modified categorical approach that the North Carolina statute does not perfectly track the elements of generic sexual assault; the proper course under those circumstances is "to determine whether a plea of guilty to [a crime] defined by a nongeneric statute necessarily admitted elements of the generic offense” by reference to "the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information.” Shepard, 544 U.S. at 26, 125 S.Ct. 1254.